[Crim. No. 3388.   First Dist., Div. Two.   Jan. 2, 1958.]

THE PEOPLE, Respondent, v. ANTONIO ELIJAH GRAHAM, Appellant.

Maurice H. Hardeman, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Marvin J. Christiansen, Deputy Attorney General, for Respondent.

DRAPER, J.—A jury convicted defendant of first degree robbery, first degree burglary, and rape. He was sentenced to prison for consecutive terms, and appeals from the judgment and the order denying his motion for new trial. He asserts error in the comments of the trial court to the jury.

The jury was instructed and retired at 1:57 p. m. At 2:08, the jury returned to ask for the written instructions. Upon stipulation, they were handed to the foreman and the jury again retired at 2:11. At 5:08 p. m., the jury returned. The foreman said "We were discussing the degree . . . We were interested in . . . the interpretation of 'deadly weapon.' " There was some discussion between the foreman, another juror and the court as to the wrench which had allegedly been carried by appellant. ▇ The court then said:

"Ladies and gentlemen, this case is very simple. There is no question about it. I have never in my experience as a judge, some fifteen years, heard a more simple case than this.

"Now, I can't tell you what to do. That is up to you, but I can comment on the evidence.

"Now, in any case of burglary or robbery or rape, even if there was no weapon used, it could still be rape. It could still be first degree robbery. It could still be first degree burglary. The size of the man is sufficient to create fear in a female such as the complaining witness. He didn't have to have a weapon to make it first degree burglary or first degree robbery or rape. His strength alone was sufficient to create fear, to put the woman in fear."

After brief further discussion between court and jury, the court said: "But, aside from the instructions, I don't see how this man can claim he didn't do what he has been accused of doing. The girl told a straightforward story and he corroborated everything she said in his written confession and in the recording.

"Of course, after he gets on the stand, he denies a lot of what he said in the recording and in the written confession over his signature.

"Now, how can you expect to believe a man like that? Although the man came in here and said, 'I am not guilty and I didn't do what she said I did on the stand,' what statement did he make to the police?"

After some further comment in similar vein, the court said: "I can't understand it. Of course, it's up to you, but this is the most convincing case that I have ever tried. The District Attorney has produced everything except a moving picture of what happened and the reason he didn't introduce a moving picture of what happened is because he didn't know it was going to happen. Nobody knew it was going to happen."

The jury returned to its deliberations at 5:21 p. m. At 5:55, it returned with verdicts of guilty on all three counts, and fixed the robbery and burglary as of the first degree.

Although the constitutional amendment of 1934 (Cal. Const., art. VI, § 19) permits the trial court to comment upon the evidence, the rule is clear that there are limits upon this right (*People* v. *Ottey*, 5 Cal.2d 714 [56 P.2d 193]). ▆ The court may "comment upon the evidence . . . providing its comment is temperately and fairly made and is not argumentative or contentious . . ." (*People* v. *De Moss*, 4 Cal.2d 469, 476-477 [50 P.2d 1031]). ▆ "The trial court, under the guise of comment, may not properly control the verdicts by a direction either directly or *impliedly* made" (*People* v. *Dail*, 22 Cal.2d 642, 658 [142 P.2d 828]). That decision reversed a judgment of conviction. Reversal has been based upon improper comment in a number of other cases (*People* v. *Huff*,

134 Cal.App.2d 182 [285 P.2d 17]; *People* v. *Crowley,* 101 Cal.App.2d 71 [224 P.2d 748]; *People* v. *Hooper,* 92 Cal.App. 2d 524 [207 P.2d 117]; *People* v. *Mason,* 72 Cal.App.2d 699 [165 P.2d 481]). ▆ We are unable to distinguish the comments in the case at bar from those in the cited cases. Thus the comments were not within those permitted by the constitutional provision.

▆ Respondent argues, however, that the court, in its remarks, adequately instructed the jury that the final decision rested with it, thus eliminating any suggestion of coercion of the jury or direction of the verdicts. Early in his remarks, the trial judge did say "Now, I can't tell you what to do. That is up to you, but I can comment on the evidence." Later, he said "Of course, it's up to you, but" and then followed with even stronger statements than previously made. It is doubtful that even a full instruction upon the jury's right to exercise its independent judgment (see CALJIC 7, 7a) would dispel the harmful effect of the comments made in this case. It is clear that no such purpose was served by the perfunctory disavowals here expressed.

There remains the question whether the error "has resulted in a miscarriage of justice" (Cal. Const., art. VI, § 4½). Our Supreme Court has ruled that this is a proper inquiry where comments of the trial judge constitute error (*People* v. *Ottey, supra,* 5 Cal.2d 714, 726).

The prosecutrix testified that she returned to her residence at about 9:30 p. m. As she unlocked the door, appellant pushed her inside, closed the door, chased her around the room, and caught her. He threatened to hit her with a wrench if she screamed, gagged her, tied her hands, ripped off her clothing and raped her. He then picked up her billfold from the top of the radio, threatened harm to her if she called the police, and left. The billfold contained money. Appellant signed a confession in which he admitted forcing his way into the house and forcing prosecutrix to submit to sexual intercourse with him. He also admitted taking the wallet, which he said contained some pictures but no money. Questions asked of appellant by police on another occasion, and his answers, were recorded and the recording was played to the jury. It was substantially the same as the written confession.

▆ Burglary is the entry of a "house, room . . . with intent to commit grand or petit larceny or any felony" (Pen. Code, § 459). The burglary count of the information charged that appellant entered complainant's residence "with intent

to commit theft therein." Thus it was incumbent upon the people to show that appellant's entry was with the intent to commit theft, and proof of intent to commit another felony would not support a conviction (*People* v. *Mulkey*, 65 Cal. 501 [4 P. 507]). Appellant's confessions do not cover this point. The evidence might be viewed as warranting the inference that appellant entered this home to commit theft. But the record more convincingly indicates that his intent was to gratify sexual, and not financial, desires. The comments of the judge effectively removed this question from consideration by the jury, and the judgment upon the burglary count must be reversed.

There is ample evidence to sustain a verdict that appellant's taking of complainant's personal property was "accomplished by means of force or fear," and thus constituted robbery (Pen. Code, § 211). However, to establish robbery in the first degree it was essential, under the facts here, to show that appellant was armed with a dangerous or deadly weapon (Pen. Code, § 211a). The weapon apparently relied upon by the prosecution is a wrench which appellant had carried in his pocket. This implement is not in evidence. The record does not contain any description of its size. Complainant testified that appellant threatened to hit her with the wrench "if I would holler," and that he then laid the wrench on a table. In his written and his recorded statements appellant admitted threatening complainant with the wrench. At trial, he testified that he had not threatened complainant, but had merely taken the wrench from his pocket and laid it on the table. When the jury came in for further instructions, the foreman asked for the definition of "deadly weapon." The court's answer, in part, was: "A monkey wrench—there is no question about a monkey wrench being a deadly or dangerous weapon." The foreman asked: "Size is not too important, then?" The court answered: "No, size doesn't mean anything." One juror then referred to the monkey wrench and said: "We haven't seen this weapon if there is a weapon. Is it necessary to raise the wrench to make it a deadly weapon or is it still a monkey wrench if it is taken from a pocket and laid on a table?" The court: "It would be on the table." An objection by appellant's counsel was made, and the court thereupon made the comments quoted earlier in this opinion. It is apparent that, from the evidence, the jury could have found that the wrench was not a deadly or a dangerous weapon in the light of all the attendant circumstances (*People*

v. *McKinney*, 111 Cal.App.2d 690 [245 P.2d 24]; *People* v. *Freeman*, 86 Cal.App. 374 [260 P. 826]). One juror's question indicates that he had this question in mind. It was error to instruct that the wrench was a deadly weapon as a matter of law. Combined with the strong directions to the jury earlier quoted, this error took the question of degree from the jury and requires reversal of the conviction of first degree robbery.

The rape count presents a different situation. Appellant admitted the rape both orally and in writing. On the stand, he made an extremely weak and conflicting effort to suggest consent by the prosecutrix. Later in his direct examination, he contradicted himself when, in attempting to deny penetration, he said that his attempt at penetration had been unsuccessful because of the woman's resistance. His own testimony was so clearly incriminating as to this count that we can see no possible miscarriage of justice. It is significant that the questions asked of the judge by jurors dealt only with the definitions of degree, an issue not involved in the rape count. No juror's question had any relation to the charge of rape.

The judgment of conviction of first degree robbery and burglary is reversed. The judgment and the order denying new trial are affirmed insofar as the count of rape is concerned.

Kaufman, P. J., and Dooling, J., concurred.