[Crim. No. 3382. First Dist., Div. One. June 18, 1958.]

THE PEOPLE, Respondent, v. FLANOLA PLAYER, Appellant.

Stanley R. Evans, under appointment by the District Court of Appeal, and Moerdyke, Anderson, Evans & Rhodes for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Convicted of committing forcible rape (Pen. Code, § 261, subd. 3), defendant asserts error in the admission of evidence and in the judge's comments made after instructing the jury.

(1) A small pearl handled knife was introduced in evidence, predicated upon the prosecutrix' testimony that this knife "looks very similar to" the knife with which she testified he cut her on the cheek and threatened to use again.

Defendant objected upon the ground of lack of proof that this was the very knife which the defendant used upon that occasion.

█ A positive identification is not necessary when an object is introduced for the purpose of illustration. █ A party desiring the jury instructed as to such a limitation of purpose must request an instruction thereon or be foreclosed from later objecting. (*People* v. *Sampsell,* 104 Cal.App. 431, 441 [286 P. 434]; *People* v. *Ferdinand,* 194 Cal. 555, 563 [229 P. 341]; *People* v. *Aguirre,* 158 Cal.App.2d 304, 307 [322 P.2d 478]. One of the officers later testified that this knife was found upon defendant's person at the time of his arrest.

(2) Defendant made three out-of-court statements. Informed by the arresting officer that the prosecutrix had accused him of raping her, defendant said he knew nothing about it.* Later he gave two statements to the district attorney, one on October 10, the other on October 15, 1956. Each was taken down and transcribed; that of October 15 was signed by the defendant, the other was not.

---

*Defendant, represented by other counsel than upon this appeal, moved that the witness' answer be stricken because the statement was not an admission. The motion was overruled.

His October 10 statement was substantially the same as his oral statement to the arresting officer.

In his October 15 statement defendant said that he met the prosecutrix about two or three weeks before the date of the alleged crime (October 9) and gave her $5.00, which she accepted, for sexual intercourse; and that on the 9th he asked her again and she accepted another $5.00 and willingly had intercourse with him. Defendant says it was error to admit the October 10 statement into evidence, asserting it was not against his interest nor did it serve the function of impeachment. He did not testify until later during the trial.

Inconsistent statements relevant to the crime charged are not limited to use for impeachment purposes. They have substantative effect as tending to show a consciousness of guilt, much the same as is evidence of flight. In *People* v. *Moran,* 144 Cal. 48, 60 [77 P. 777], the defendant first denied being at the scene of the crime, and then admitted being there, although continuing to deny participation in the murder. The court held the first statement admissible: "But Moran finally admitted that he was at the scene of the murder and this made his previous denials of that fact evidence against him on the same principle that his flight was evidence against him." In *People* v. *Goldstein,* 136 Cal.App.2d 778, 792 [289 P.2d 581], the defendant first denied knowing one of the conspirators, who was the chief prosecution witness, and then admitted that he did know him. The court held the first statement admissible as showing, together with the second statement, a consciousness of guilt.

Defendant distinguishes the Moran case on the ground that the facts do not show whether the statement was introduced before or after the defendant there testified, and "we would therefore assume that it was used in a proper way rather than being introduced as a part of [the] prosecution's case, as in the case at bar." There is no indication in the Moran opinion that the defendant testified. Had this been important, it would be equally reasonable to assume that the court would have mentioned it. Defendant would distinguish the Goldstein case on the ground that elsewhere in the opinion the court made reference to admissions against interest (language which we do not find). Defendant appears to be confused about the purpose of admitting such statements; i.e., to show a consciousness of guilt, not as exceptions to the hearsay rule to show the truth of what was therein stated.

(3) Do the trial court's comments to the jury furnish a basis for reversal?

After instructing the jury the court commented upon some of the evidence in the case, with reference particularly to the bearing thereof upon the credibility of the prosecutrix and the defendant, respectively, as witnesses. Upon this appeal, defendant criticizes portions of those comments, claiming they exceeded the bounds of permissible comment as sanctioned by section 19 of article VI of our state Constitution. This section, as amended in 1934, declares that the "court may instruct the jury regarding the law applicable to the facts of the case, and may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case. The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses."

 In one of the questioned passages the trial judge brought to the attention of the jury certain facts which he deemed significant in determining the credibility of the prosecutrix: "Well, for that reason, you should consider the conduct of the prosecuting witness after the alleged occurrence. What did she do after this thing happened? If it happened the way the defendant told you it happened, then the natural conduct of a person—of a woman—would be to go home and forget it, put the money away, if she did accept the money, and forget about it. But, in this case, what did she do? She called the Sheriff. That's the first thing she did. Now, if she had been paid and if she had consented to the act of sexual intercourse, would she have called the Sheriff?"

Defendant suggests that here the judge misconstrued the testimony when he said "She called the Sheriff. That's the first thing she did." We find it a reasonably accurate statement. Concerning the time when the prosecutrix called the sheriff, her own counsel said, "I believe she said, 'The first thing I did when I got home.' "

Nor do we believe that by the words used in this portion of the comment the court intended to or did take from the jury the determination of any question of fact. This portion was immediately preceded by a cautionary instruction to view with caution the testimony of a prosecuting witness in a case of this kind, stating adequately the reasons for such caution. Also, this portion of the comment was immediately followed by the following instruction: "That it is up to you to determine. After all, you are the sole judges of the facts. Any opinion that I may express to you in this comment that I am

making now is not stating my own views. I am merely pointing out some of the highlights of the case in order to help you in arriving at a verdict. But, after all, you are the ones who have the responsibility of deciding whether this defendant is guilty or not guilty."

This instruction in turn was immediately followed by the other questioned portion of the trial court's comments: "Another thing you should consider, in my opinion, is whether or not a woman undergoing an ordeal of this kind—if she did undergo any ordeal—could she remember every single detail that took place? Now, if what she told you is true, that she had a knife pointing at her, that she only weighs 101 or 102 pounds, and this defendant is much bigger, much stronger than she is—if it is true what she told you, could she remember every single detail that took place? Suppose any of you would be walking down the street some night and a man or woman pointed a gun at you and took your money. You would be so frightened that, afterward, could you describe the color of the man's eyes? Could you describe his hair? Could you describe his clothing, whether the gun that he pointed was a revolver or pistol or some other kind of a gun? Those are all things you have to consider, ladies and gentlemen, in arriving at a verdict.

"I don't know what experiences a woman goes through out in a place of this kind such as has been described—I don't know, if she undergoes an experience such as this woman says she did, if you can expect a woman to remember all the particular details.

"She did remember, according to her testimony, that this man had a white knife and the point was missing. Now, the only other time she saw that knife was here in Court. If she was not telling the truth, would she be telling us that she saw a white knife? And the white knife was found on the person of this defendant.

"Now, this defendant tells you that he was out on the highway, standing there, which, to ordinary people, would prove that he did not manifest a consciousness of guilt. If he thought in his own mind that he had done something wrong, he wouldn't be standing there on the highway. But you must remember that he told you he had been drinking and sometimes it is very difficult to explain why people act the way they do after they have been drinking. It is very difficult to explain.

"Now, you can ask yourselves who has more to gain in this case by your verdict. What will this woman gain if you find

the defendant guilty? Nothing. What will the defendant gain if you find him not guilty? He will gain his freedom. So who has more at stake here? The complaining witness or the defendant?

"Those are things that you have to consider."

The judge's comments continued along similar lines, concluding with the following statement to which defendant's counsel especially excepts: "Ladies and gentlemen, I am leaving the case in your hands. You have a grave responsibility. By your verdict you will let us know whether the Courts are doing their duty, whether the law should be enforced and how these cases should be handled." This statement, in the light of the prior comments and repeated instructions that the jury was the sole judge of the facts, should not be viewed as taking from the jury the determination of any of the facts.

It seems to us that the questioned portions of the trial court's comments were within the scope of the sanctions granted by section 19 of article VI of the Constitution as expounded by our Supreme Court in *People* v. *Ottey*, 5 Cal.2d 714, 722-730 [56 P.2d 193], and followed in such cases as *People* v. *Robinson*, 73 Cal.App.2d 233, 236-240 [166 P.2d 17]; *People* v. *Rupp*, 41 Cal.2d 371 [260 P.2d 1]; and *People* v. *Sakelaris*, 154 Cal.App.2d 244, 248 [315 P.2d 902].

The questioned comments are not in the category of those that were involved in *People* v. *Hooper*, 92 Cal.App.2d 524 [207 P.2d 117], characterized by the reviewing court as "oral comments on the evidence, which we must assume were delivered to the jury in an impassioned and argumentative manner of an advocate, by means of undue emphasis, intonation and gesticulations" and held to be "prejudicial and [to prevent] . . . an impartial trial or due process." (P. 530.) Nor do the portions of the comments questioned upon this appeal include an incorrect or inaccurate instruction upon the law as did the comments involved in *People* v. *Dail*, 22 Cal.2d 642, 656 [140 P.2d 828]. Nor were they tantamount to a direction to find in a certain fashion as was the case in *People* v. *Graham*, 156 Cal.App.2d 525 [319 P.2d 677].

█ It is true that *People* v. *Talkington*, 8 Cal.App.2d 75, 95, 97 [47 P.2d 368], lends support to defendant's contention that if the testimony is reviewed the court must include the testimony offered in favor of as well as that offered against the defendant. However, that doctrine was rejected by our Supreme Court in *People* v. *Ottey, supra*, 5 Cal.2d 714, 728:

"There is no merit to the contention that the court, if it venture to comment on the evidence or the testimony of witnesses or of any witness, must sum up all the evidence and the testimony both favorable and unfavorable. There is no such injunction, express or implied, in the language of the Constitution, and none that would compel it under established rules in other jurisdictions. ▮ The provision in the Constitution expressly permits the court to 'make *such* comment on the evidence and the testimony and credibility of any witness *as in its opinion is necessary for the proper determination of the case.*' The court may therefore exercise its own discretion in respect to what comment it will make, so long as it does not withdraw any material evidence from the consideration of the jury (and it does not appear to have done so in the present case), and does not attempt to control the verdict by a direction."

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied July 18, 1958.