[Crim. No. 6517. In Bank. Feb. 5, 1960.]

THE PEOPLE, Respondent, v. GEORGE ALBERT SCOTT, Appellant.

Morris Lavine, under appointment by the Supreme Court, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Ernest E. Sanchez, Deputy Attorney General, for Respondent.

SPENCE, J.—Defendant Scott and one Lichtenwalter were jointly indicted on six counts of robbery and one count of murder. Scott was charged with being armed with a deadly weapon, a sawed-off shotgun, at the time of commission of the above offenses. In addition, the indictment charged Scott with two further counts of robbery. By amendment, Scott was also charged with two prior felony convictions, which he admitted. Scott pleaded not guilty and not guilty by reason of insanity to the nine counts. The jury found him guilty of robbery of the first degree on counts I to VI (Pen. Code, § 211a, armed robbery), murder of the first degree on count VII (Pen. Code, § 189), and robbery of the second degree on counts VIII and IX. The jury fixed Scott's penalty at death on the murder count and found him sane at the time the crimes were com-

mitted. His motions for a new trial were denied. Judgment was then entered imposing the death penalty on the murder count and the penalties prescribed by law on the robbery counts. This appeal comes here automatically. (Pen. Code, § 1239, subd. (b).)

Lichtenwalter was acquitted on the murder count but was found guilty of robbery in the first degree on counts I to VI. He then withdrew his plea of not guilty by reason of insanity to these six counts. He was sentenced on the robbery counts and has not appealed.

Defendant Scott makes no contention that the evidence was insufficient to support the judgment. At the trial on the issue of guilt, Scott presented no evidence but in the ensuing proceedings for fixing the penalty and determining the sanity issue he did produce some witnesses. He did not take the witness stand himself in any of the proceedings. His appeal is based on his contentions: (1) That the court committed error in directing the jury to return to the jury room for further deliberation and in failing to preserve the original verdicts; (2) that the court improperly denied his motion for a mistrial; and (3) that the court made improper comment on the evidence at the end of the sanity proceedings, so as to deny him a fair trial. We have concluded that these contentions are without merit.

The evidence concerning the commission of these crimes is without conflict. Scott and Lichtenwalter jointly perpetrated six robberies of taverns in Los Angeles between December 16 and December 30, 1958. In each instance, the same general pattern was followed in that both the cash receipts of the bar owner and the contents of wallets of customers in the bar were taken. Neither of defendants wore a mask or other facial disguise. Scott on each occasion was armed with a sawed-off shotgun. On the last of these joint robberies, Scott shot and killed a patron in the bar because he refused to give up his wallet. Thereafter, on January 7, 1959, Scott alone committed two further tavern robberies in Los Angeles.

The court fully instructed on the crime of robbery, stating that its commission by one armed with a deadly weapon constituted robbery in the first degree and instructing the jury that if they found the "crimes of robbery were committed and that any one of the persons who committed it was armed with a 12 gauge sawed-off shotgun (as charged in counts I to VI), the robbery would be of the first degree." The jury, however, returned with verdicts finding Lichtenwalter guilty

only of robbery in the second degree. The court refused to receive these verdicts, reinstructed the jury on the degrees of robbery, and directed the jury to resume further deliberation. This was proper. Under section 1161 of the Penal Code, the court is authorized, when "there is a verdict of conviction [and] it appears to the court that the jury have mistaken the law," to explain the mistake and direct a reconsideration. The evidence submitted to the jury warranted only one of two conclusions as to the guilt of the codefendants charged under counts I to VI: either guilty of robbery in the first degree or not guilty. Accordingly, when the jury returned verdicts finding Lichtenwalter guilty of robbery but only in the second degree, these verdicts were contrary to law, and it was the court's duty to correct the jury's understanding so that proper verdicts as to Lichtenwalter could be returned. (*People* v. *Crawford*, 115 Cal.App.2d 838, 841-842 [252 P.2d 963]; 48 Cal.Jur.2d Trial, § 515, p. 521.)

 Defendant Scott argues that the verdicts originally returned should have been preserved so as to have a complete record of the trial in his case, and he indulges in considerable speculation on the premise that "if one set of verdicts was tainted, so was the other." But there is nothing in the record to indicate that the jury had any uncertainty as to the guilt of Scott or that the verdicts of robbery in the first degree against him, constituting part of the present record on appeal, were not the original verdicts against Scott. Under the circumstances, the disposition of Scott's appeal could not be affected even if the original erroneous verdicts against Lichtenwalter had been included in the record here.

 Nor did the court err in failing to declare a mistrial. After the court had reinstructed the jury and directed further deliberation, the jury again returned and handed two sets of verdicts to the court. Upon examining the verdicts, the court discovered that they were contradictory with respect to Lichtenwalter and directed the jury to retire again and then bring back one set of verdicts. Following the jury's retirement, both defendants moved for a mistrial upon the ground that the jury did not understand the instructions. The motion was denied. The record merely shows an impropriety on the part of the jury in the mechanics of returning the verdicts to the court, by including both the old and the new verdicts. This was readily corrected when the court explained the error. In these circumstances, the court, in the exercise of its sound discretion, properly denied the motion for mistrial. (*People* v. *Grant*,

53 Cal.App.2d 286, 288 [127 P.2d 567] ; 48 Cal.Jur.2d Trial, § 349, pp. 348-349.)

Finally, Scott contends that he was deprived of a fair trial because of the court's comments on the evidence at the end of the proceedings on the sanity issue. He claims that the court exceeded its power and went beyond the bounds of permissible comment as sanctioned by section 19 of article VI of our state Constitution. That section, as amended in 1934, declares that the ''court may instruct the jury regarding the law applicable to the facts of the case, and may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case. The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses.'' (See also Pen. Code, § 1093, subd. 6.)

It appears that after the jury had been instructed at the conclusion of the sanity proceedings and had still not reached a verdict by the afternoon of the next day, the court recalled the jury to the courtroom and stated that it wished to give some ''additional instructions.'' At the outset, the court referred to the state Constitution (art. VI, § 19, as amend. 1934) as authority for the ''several comments'' it was about to make. It then stated the jury's problem, to be determined from the evidence, was whether Scott was sane at the time of commission of the offenses charged, and it proceeded to note briefly some aspects of the law and the record which had a bearing thereon : that Scott had the burden of overcoming the presumption of sanity at the times in question by a preponderance of the evidence ; that the only evidence he produced was the testimony of his mother that she had seen him twice in the state prison before commission of the alleged offenses (when he was incarcerated on a prior felony conviction) and once in the county jail since his present arrest, and that she did not see him during the times of commission of the alleged offenses; that the People had produced three court-appointed psychiatrists, all of whom testified that Scott was sane at the time of commission of the offenses charged as well as presently sane ; and that the People had also presented the circumstances of the alleged offenses for consideration in determining whether Scott was legally sane at those times. In closing its remarks, the court reiterated the jury's responsibility to determine the sanity issue and cautioned the jury that it should ''exercise the same independence of judgment in weighing the judge's

comments on the evidence as . . . in weighing the testimony of the witnesses and the arguments of counsel''; that it was the ''exclusive judges of the credibility of witnesses and all questions of fact submitted''; and that the court's authority to express its personal thoughts ''is confined to the sole purpose of aiding [the jury] in arriving at a verdict and may not be used and is not used in this case to impose [its] will upon [the jury] or to compel a verdict.''

Scott contends that the court's use of the words ''additional instructions'' in opening its statement to the jury was misleading and indicated that the jury should follow the court's view of the evidence as a matter of law. He further claims that the court's comments were inaccurate because his mother's testimony was designated as the ''only testimony'' presented on his behalf, and the court failed to give its full substance; and because the testimony of two additional witnesses, a family friend and a doctor who had examined Scott while he was confined in jail on the present charges, was omitted. On the basis of these latter matters, Scott contends that the court effectively withdrew material evidence from the jury's consideration and unduly influenced the jury. (*Cf. People* v. *Graham,* 156 Cal.App.2d 525, 527-528 [319 P.2d 677] ; *People* v. *Mason,* 72 Cal.App.2d 699, 712-713 [165 P.2d 481].)

But there is ''no hard and fast rule determinative of what a trial judge may or may not say to a jury in commenting on the evidence and the credibility of the witnesses.'' (*People* v. *Ottey,* 5 Cal.2d 714, 724 [56 P.2d 193].) Rather, ''each case must necessarily turn upon its own peculiar circumstances.'' (*People* v. *De Moss,* 4 Cal.2d 469, 477 [50 P.2d 1031].) While the court's ''power to comment on the evidence, of course, is not unlimited'' (*People* v. *Friend,* 50 Cal.2d 570, 577 [327 P.2d 97]) and the court must be temperate and dispassionate in its remarks, its ''comment is not confined to a colorless recital, by way of summing up the facts.'' (*People* v. *De Moss, supra,* p. 477.) It ''may restrict [its] comments to portions of the evidence or to the credibility of a single witness and need not sum up all the testimony, both favorable and unfavorable.'' (*People* v. *Friend, supra,* p. 578.)

Here, while the court, in introducing its forthcoming statements, used the word ''instructions,'' it immediately thereafter referred to the ''several comments'' it wanted to present and emphasized therein on more than one occasion that the jury must consider itself as the final and exclusive arbiter

of questions of fact and of the credibility of the witnesses and was in no way bound by any view or opinion expressed by the court. In this manner, the court carefully and clearly labeled its remarks, taken as a whole, as its opinion of the evidence, stressing that its views were not binding but only advisory, and the jury could not reasonably have mistaken its own responsibility or the scope of its own power to make the ultimate determination of the factual issues. The court's comments were no more than an attempt to analyze the evidence on the sanity issue and to generally assist the jury in resolving some of the evidentiary factors.

Scott produced two witnesses on his behalf at the sanity proceedings, his mother and a family friend. In referring to the mother's opinion of Scott's insanity, based upon her visits with him at times before and after the commission of the alleged offenses, as the "only testimony" presented by Scott, and failing to recite the balance of her testimony consisting of her observations of Scott's change of personality and erratic conduct at times some ten years or more prior to the commission of the alleged offenses, the court was merely expressing its personal view of relevant evidence and omitted what it considered to be too remote to be material. The same reason apparently prompted the court to omit any reference to the testimony of the family friend reciting her remote observations of Scott's behavior, for the court repeatedly emphasized the jury's problem as concerned only with the question of Scott's sanity or insanity "at the time of the offenses charged." The doctor whose testimony the court failed to mention testified only at the penalty phase of the proceedings, not at the sanity hearing, which was, however, before the same jury. As a psychiatrist, the doctor stated that Scott was a "sociopathic personality," was unable to tolerate frustration, had a "compulsion neurosis" so as to be "mentally ill," and while he had "an awareness of rightness and wrongness, his idea of right and wrong is different from ours." The doctor was not asked, and he expressed no opinion, as to whether Scott was legally sane at the time of the alleged offenses; and as just mentioned, he was not called by Scott for the sanity phase of these proceedings, so that any opinion that the doctor might have expressed on Scott's legal sanity at the time in question could have been tested on cross-examination. Under all the circumstances, it is apparent that the court in its comments was merely undertaking to allude to what, in its personal view of

the sanity hearing, constituted the "only" significant testimony offered by Scott on that phase of his trial. Unquestionably, the court's comments were not argumentative or contentious to a degree amounting to partisan advocacy as was the case in *People* v. *Mason, supra,* 72 Cal.App.2d 699, 712, nor tantamount to a direction to find in a certain fashion as was the case in *People* v. *Graham, supra,* 156 Cal.App.2d 525, 528. Rather, the court here was only exercising its power to analyze the evidence critically, giving its opinion and views with regard to the relevant testimony of witnesses on both sides for the guidance of the jury but leaving the ultimate determination of the issues of fact fairly to the jury. (48 Cal.Jur.2d, Trial, § 66, p. 120.) In short, the court's comments in our opinion did not violate any of defendant Scott's rights but were fair and warranted by the evidence and the constitutional provision above quoted.

▆▆▆ Upon the oral argument, counsel for defendant Scott suggested for the first time that the record at the trial contained further evidence of defendant's insanity as disclosed by photostatic copies of the files of the United States Navy. Defendant was granted leave to augment the record on appeal by bringing up these exhibits, and they are now before us. The last entries in these exhibits are dated 1945, whereas defendant committed the present offenses in 1958. Furthermore, these exhibits were introduced only on the penalty phase of the trial and were not offered on the trial of defendant's sanity. But regardless of the remoteness of the time covered by these exhibits and defendant's failure to introduce them on the trial of his sanity, they contain no substantial evidence of defendant's insanity. On the contrary, the final report of the Board of Medical Survey dated January 16, 1945, as shown by these exhibits, found defendant to be "sane and mentally competent." It is therefore clear that defendant cannot base a claim of prejudicial error on the failure of the trial court to mention these exhibits in his comments on the evidence in the sanity phase of the trial.

▆▆▆ One further point was urged for the first time on oral argument by counsel for defendant Scott. He contended that the trial court had erred in instructing the jury on the penalty phase of the trial that "a defendant serving a life sentence may be paroled but not until he has served the minimum number of years as determined by law." The only authority cited in support of this contention is *State* v. *White* [N.J.], 142 A.2d 65. It has been repeatedly held in this state, however, that

substantially similar instructions may properly be given to the jury. (*People* v. *Ward,* 50 Cal.2d 702, 711 [328 P.2d 777] ; *People* v. *Friend,* 47 Cal.2d 749, 754-755 [306 P.2d 463] ; *People* v. *Green,* 47 Cal.2d 209, 217 [302 P.2d 307] ; *People* v. *Barclay,* 40 Cal.2d 146, 158 [252 P.2d 321].) We therefore find no error in the giving of the challenged instruction.

The judgment and order denying a new trial are affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters J., and White, J., concurred.

Appellant's petition for a rehearing was denied March 3, 1960.