[Crim. No. 1460. Fourth Dist. Apr. 7, 1961.]

THE PEOPLE, Respondent, v. HARRIETT SCHWENK-NER, Appellant.

Thomas Whelan for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Vincent W. Thorpe, Deputy Attorney General, for Respondent.

SHEPARD, J.—Defendant was charged with two counts of grand theft and with two prior felony convictions of issuing checks without sufficient funds. She admitted the two prior felony convictions before trial, and did not, at the trial,

take the witness stand in her own behalf. The jury returned a verdict of guilty on each count. Judgment was entered accordingly. Her motion for a new trial was denied, and she appeals.

### SUFFICIENCY OF EVIDENCE

Defendant's first contention on appeal is that the evidence was insufficient as a matter of law to sustain the verdict and judgment. Count one of the information charged theft of $1,235.89 from Atomic Investments, Inc., hereinafter called "Atomic." Count two charged theft of $243.95 from Carpenters, Inc., hereinafter called "Carpenters."

Viewing the evidence in the light most favorable to the judgment, as we must (*People* v. *Fuqua*, 181 Cal.App.2d 510, 528 [6-8] [5 Cal.Rptr. 408]), the record shows the following facts: During 1959 Teyssier and Teyssier, Inc., hereinafter called "Teyssier," Atomic and Carpenters employed large numbers of men in various construction projects. Teyssier did the clerical and payroll accounting work for the other corporations. Defendant was employed as a bookkeeper by Teyssier, at a salary of $100 per week. She was not the employee of Atomic or Carpenters. Due to the type of construction work in which the corporations were engaged, there were frequent cessations of work and it was often necessary to pay off some employees in midweek. To meet this problem of prompt payment of construction employees, a system was arranged by which many signed payroll checks were kept on hand with the payees and the amounts left blank and with a maximum limit marked on the checks. These checks, when needed, were filled in with the correct names and amounts, sometimes by the job superintendent or foreman, sometimes in the office.

Defendant, as a part of her clerical duties, had joint authority to sign and fill in these job checks, and keep the journals in which the checks were recorded. She had no authority whatever to sign or fill in any of these checks for her own personal use. The evidence shows, without contradiction, that defendant did fill in and cash for her own use above and beyond and in addition to her regular salary, checks drawn on the accounts of Atomic and Carpenters totaling the amounts charged. Defendant last reported for work Friday, August 7, 1959. On Monday, August 10, 1959, she did not report for work, and never returned. Efforts to find her were temporarily fruitless. Some of the payroll journals on which defendant worked were missing and were never recovered.

Defense counsel advanced the theory that the checks came to defendant for overtime work and that she took the checks openly, avowedly and under a claim of title preferred in good faith, and produced some evidence on behalf of defendant that might have been partially corroborative of such a theory had defendant herself so testified. However, as above noted, defendant did not take the witness stand. The only direct evidence on the subject was that if defendant worked overtime she was to present a request for payment and such payment would be directly authorized by the president of Teyssier; that defendant had no authorization whatever to pay overtime without the Teyssier president's approval. Whether she actually worked overtime for which she received no pay or compensating time off is the subject of serious conflict. However, the sum total of the evidence shows beyond question that defendant was solely hired by and was solely the employee of Teyssier; that she was never at any time employed by or to be paid by Atomic or Carpenters. Defendant herself never at any time offered any evidence to the contrary.

### ALLEGED WEAKNESS OF TESTIMONY

Defendant's primary challenge to the sufficiency of the evidence is based on alleged weakness of the testimony of Leonard E. Teyssier. He testified positively and unequivocally on direct examination as to each check that defendant had no authority to fill in for her own use the check in question. No evidence was offered to contradict this statement. On cross-examination he was asked several hundred questions, many of which were compound, assumed, without stating, facts not clearly called to the attention of the witness, involved abstractions, innuendo, or called for hearsay, estimates, conclusions or memory on comparatively minor details which in the ordinary course of business might well have been forgotten by a normal business manager. The witness was then asked the general question:

"Q. Are you talking about what is more likely, or are you telling us what you actually know as a fact? A. Well, a lot of these questions I have to answer the best I can from what I remember or know about it.

"Q. Are you guessing on some of your answers? A. I think I qualified my answers to the extent that it explains whether or not it is something that I know for a fact or what was likely to have happened. You have to depend on the policy that you establish for a pattern.

"Q. Can you answer my question: Are you guessing on some of your answers? A. I am basing my answers on the policy of the company.

"Q. Can you answer that question yes or no: Are you guessing on some of your answers? A. Well, I think I would be, yes."

Defendant now charges that the witness' testimony was evasive, contradictory and uncertain, and that the foregoing questions and answers are demonstrative in part of such uncertainty. After reading the entire testimony, we are satisfied that the jury would have been fully justified in concluding that the witness' testimony was as direct and straightforward as the questions would permit. There was nothing compellingly contradictory in his testimony on any material matter. ▪ Weighing the credibility, value and effect of the evidence is within the province of the trier of fact, in this instance the jury. (*People* v. *Cannon,* 77 Cal.App.2d 678, 688 [2] [176 P.2d 409].) ▪ We are satisfied that the evidence was amply sufficient to support the verdicts and judgment.

### GRAND THEFT

▪ Grand theft now includes the crimes of larceny, embezzlement, larceny by trick and device, and obtaining property by false pretenses. ▪ As was said in *People* v. *Ashley,* 42 Cal.2d 246, 258 [3] [267 P.2d 271]:

"Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an 'unlawful taking' has been proved." See also *People* v. *McManus,* 180 Cal.App.2d 19, 32 [4] [4 Cal.Rptr. 642].

▪ In the present case it sufficiently appears that the elements of embezzlement, to wit: (1) agency; (2) property ownership in principal; (3) possession by agent; (4) conversion by agent; and (5) intent, are shown by the evidence. (*People* v. *Proctor,* 169 Cal.App.2d 269, 277 [6] [337 P.2d 93]. See also *People* v. *Gallagher,* 100 Cal. 466, 471 [35 P. 80].)

### CLAIM OF TITLE IN GOOD FAITH

▪ Defendant advances the theory, without any testimony by herself on her own behalf, that she was entitled to a presumption that she appropriated the property openly and avowedly under claim of title preferred in good faith, as referred to in Penal Code, section 511. As was stated in *People* v. *Proctor, supra,* page 277 [1b]:

"In the final analysis, at most, appellant claims the proceeds of the check here in question as an offset against a debt due her for overtime wages. This is not a defense contemplated by section 511 of the Penal Code, which does not excuse the unlawful retention of the property of another to offset or pay demands held against him [citation]. As was said in *People* v. *Ranney,* 123 Cal.App. 403, 409 [11 P.2d 405]: '. . . The defendant had money in his possession which he claims belonged to the company, and which he sought to retain to pay a demand for commissions which he asserts were due to him from the company. He had no right to help himself to the funds of the company, even to pay an acknowledged debt. The latter portion of Section 511, *supra,* declares that the provision of that section, "does not excuse unlawful retention of the property of another to *offset or pay demands held against him.*" ' "

Furthermore, the evidence clearly shows that defendant was never at any time the employee of Atomic or Carpenters, and that the checks of Atomic and Carpenters which she was handling were being handled by her as a part of her employment and payment by Teyssier. Nothing in the evidence shows that she ever considered herself an employee of the two corporations from whom she took the money. It is true that in handling the checks she was an agent of Atomic and Carpenters, but this agency came about solely through her employment by Teyssier.

Under the evidence presented, Penal Code, section 511, is not applicable.

### COMMENTS BY TRIAL COURT

Defendant contends that the trial court improperly commented on the evidence, and that such comments were prejudicially argumentative. California Constitution, article VI, section 19, provides as follows:

"The court may instruct the jury regarding the law applicable to the facts of the case, and may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case. The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses."

Of course, the trial judge may not, by his discourse to the jury, control the verdict. (*People* v. *Graham,* 156 Cal.

App.2d 525, 527 [3] [319 P.2d 677].)  ▇  But the argumentative form of comment present in the Graham case is not present in the case here at bar. First, the court carefully cautioned the jury that it was their right and duty to exercise independent judgment in weighing the judge's comments as in weighing the evidence of witnesses and argument of counsel. He reminded them they were the exclusive judges of the credibility of witnesses and of all questions of fact, and that his purpose was to aid them in arriving at a verdict and not to compel the verdict. He then made the following statements:

"I believe the testimony of Mr. Teyssier to the effect that the checks in question were not authorized in the form they bear, that is, payable to the defendant.

"I believe Mr. Teyssier authorized the issuance of said checks in blank for use by the superintendent in payment of wages to other employees, and that neither he nor any officers of Atomic Investments, Incorporated or of Carpenters, Incorporated authorized the insertion of the name of the defendant as payee in any of said checks.

"I believe that the defendant did not perform any overtime service for which she was not paid.

"And from the whole of the evidence I do not believe that the defendant had an honest belief maintained in good faith either that the money which was derived from the cashing of the checks in question was actually her money or that she had a lawful right to keep or retain it or any part of it, and I do not believe that the defendant appropriated the proceeds of said checks openly or avowedly or under a claim of title preferred in good faith."

Upon the conclusion of this statement, the judge again reminded the jury that they were the sole and exclusive judges of the evidence and the credibility of the witnesses.

Defendant contends the trial court prejudicially misstated the evidence and that his comments were argumentative and amounted to partisan advocacy.  ▇  There is no hard and fast rule determinative of what a trial judge may or may not say to a jury in commenting on the evidence and the credibility of the witnesses, and each case must necessarily turn upon its own peculiar circumstances. (*People* v. *Scott,* 53 Cal.2d 558, 564 [4] [348 P.2d 882].)  ▇  However, the following standards have been set down in *People* v. *Friend,* 50 Cal.2d 570, 576-578 [1-3, 5, 6a] [327 P.2d 97]:

"It seems clear from the use of the word 'comment' in

section 19 of article VI that a trial judge is empowered to do more than merely summarize the evidence and that he may analyze the testimony critically, giving his opinions for the guidance of the jury. . . .

"Prior to its amendment in 1934, section 19 of article VI provided that a judge could 'state the testimony,' as well as declare the law, so that the change in language would be meaningless if viewed as permitting only such action. . . .

". . . the intent of the voters was to make the judge a real factor in the administration of justice, rather than a mere referee, that the constitutional amendment removed the prior prohibition against his power to comment, and that he is no longer confined to a colorless recital of the evidence but may analyze the testimony and express his views with respect to its credibility.

"A judge's power to comment on the evidence, of course, is not unlimited. [Citations.] He may not withdraw material evidence from the jury's consideration or distort the testimony, and his comments should be temperately and fairly made, rather than being argumentative or contentious to a degree amounting to partisan advocacy. The jury, as required by the constitutional provision, must remain as the exclusive arbiter of questions of fact and the credibility of witnesses, and the judge should make clear that his views are not binding but advisory only.

"The extent to which a judge is free to comment on the evidence is shown by the fact that it has frequently been recognized that a judge may express his opinion as to the guilt or innocence of the defendant, so long as the province of the jury as defined by the constitutional section is not invaded. [Citations.]

"It is also settled that a judge may restrict his comments to portions of the evidence or to the credibility of a single witness and need not sum up all the testimony, both favorable and unfavorable."

### ALLEGED MISSTATEMENTS OF FACT BY JUDGE

Defendant argues that the trial judge prejudicially misstated the facts in three instances: First, the court commented ". . . Neither he (Teyssier) nor any officers of Atomic Investments, Incorporated or of Carpenters, Incorporated authorized the insertion" of defendant's name as payee. Leonard Teyssier, the owner and apparently the president of each of the corporations, testified he was an officer of these

corporations, but defendant claims no other officers testified and therefore the court's comment in regard to other officers was not supported by the evidence. The record of the testimony of Leonard Teyssier shows that the court's comment was not an unfair analysis of the testimony and his opinion was not unwarranted by the evidence. (*People* v. *Friend,* 50 Cal.2d 570, 576 [1, 2] [327 P.2d 97].) See *People* v. *Gosden,* 6 Cal.2d 14, 28 [8] [56 P.2d 211], where the trial judge's comment as to certain prosecution witnesses, "I see no reason for disbelieving them," was held proper. Also see *People* v. *Player,* 161 Cal.App.2d 360, 363-366 [4-6] [327 P.2d 83]; *People* v. *Yokum,* 145 Cal.App.2d 245, 256-258 [9] [302 P.2d 406]. The second and third instances are similar, and are likewise without merit.

We do not here have the argumentative manner and form of advocacy found in *People* v. *Graham, supra; People* v. *Hooper,* 92 Cal.App.2d 524, 529-530 [207 P.2d 117]; *People* v. *Huff,* 134 Cal.App.2d 182, 185 [285 P.2d 17], nor erroneous instructions included in the comments in *People* v. *Dail,* 22 Cal.2d 642, 656 [140 P.2d 828], nor withdrawal of material evidence amounting to erroneous instruction as in *People* v. *Mason,* 72 Cal.App.2d 699, 709-713 [165 P.2d 481].

The purpose of the constitutional amendment was stated in *People* v. *Friend, supra,* page 576 [2], as follows:

"The purpose of the amendment is disclosed by the ballot argument in its favor, which stated, 'This measure . . . enables the trial judge to comment to the jury on the facts of the case; to give the jurors his analysis of the evidence and to express his opinion on the merits of the case, but informing them at the same time, that his views are advisory only. . . .' "

The trial court's comments in question followed proper instructions on the law of the case, and were preceded and also followed by careful precautionary statements which informed the jury that the expressions of opinion by the court were advisory only and not binding on the jury, and could be disregarded. His analysis did not add, detract or withdraw any material evidence nor attempt to control the verdict by direction; was warranted by the evidence, and was within the provisions and purpose of California Constitution, article VI, section 19. We find no prejudicial error.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.