[Crim. No. 10080.    Second Dist., Div. Three.    May 19, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS FARNUM, Defendant and Appellant.

Richard A. Tyler for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Thomas Farnum was convicted in a jury trial of the sale of marijuana; he was placed on probation and appeals from the order, as a judgment.

Paul Edward Pulliam was a state narcotic agent working in the Santa Barbara area. Paul Raymond Smith was a dealer in marijuana. Pulliam had made purchases of marijuana from Smith. Pulliam received a telephone call from one Mike Zegers informing him that Smith had a large quantity of marijuana for sale, and Pulliam requested Zegers to tell Smith to have any marijuana that he, Pulliam, might buy delivered by someone other than Smith, as he did not want to have contact with Smith or his partner, Hackney, that he was afraid of them because Hackney had been arrested at the border with 7 kilos of marijuana. In a manner that is not disclosed by the record an arrangement was made for Pulliam to telephone Smith at the Park Hotel, and Smith was given to understand that he would have to arrange for delivery of the marijuana by someone other than himself. Smith went to the hotel at about 2:30 or 3 p.m. where he encountered appellant Farnum, who had spent the night with one Ebright in the latter's room in the hotel. Smith had a cellophane bag containing 2 kilos of marijuana. He stated he had a business deal under way and asked if he could stay in Ebright's room until he received a telephone call. He was informed that Farnum and Ebright were about to go out for lunch but that he could remain until he received the call. The call came from Pulliam and a purchase was arranged for the sale of 2 kilos for $265. Smith testified that Pulliam informed him that he would not receive the marijuana from Smith because Smith was in trouble with the police and that someone else would have to make the delivery. Pulliam testified he did not make that statement to Smith but that he had been told by Zegers that Smith would have someone else make the delivery and that when he asked "Well, when is he going to be there?" Smith answered "He'll be leaving right now." Smith testified that the meeting was to take place in about an hour; he asked Farnum to deliver the marijuana to Pulliam and offered to pay him $15; Farnum at first refused; Smith reminded him that he had received favors from him, Smith, and Farnum finally consented to make the delivery. Farnum understood the substance in the bag was marijuana. He rode Smith's motorcycle to the appointed location, delivered the marijuana to Pulliam and received $265 which he turned over to Smith and received from him $15. Pulliam testified that Farnum entered the agent's car and they drove around the block; Farnum asked "Did you get the price straight with Paul?" and said that it was $265. Pulliam opened the bag and Farnum asked whether Pulliam wanted to

"dig" it, which Pulliam understood to mean examine the contents. Pulliam said "It looks righteous to me. I have dealt with Paul before and he has always been righteous with me" and Farnum said "Yes—Paul is always righteous with the people around town. Sometimes he shorts you but he always makes it up. His pot is righteous."

When Pulliam asked that someone other than Smith make the delivery he had no one in particular in mind; he expected it would be someone connected with Smith in dealing in marijuana; he did not know Farnum and had no knowledge he had been connected with traffic in marijuana. Farnum denied he had ever had anything to do with marijuana and there was no evidence to the contrary. There was no evidence that he had been associated with Smith in any manner and no evidence that a meeting at the Park Hotel had been arranged or that Farnum knew Smith was coming to the hotel. Farnum was staying with Ebright because he was out of work and "broke."

Before instructing the jury the court addressed them as set out below.[1]

---

[1] "THE COURT: Ladies and gentlemen of the jury, I wish to make these observations as to certain evidence in this case. The law permits me to do so in aiding you in arriving at your verdict. However, notwithstanding my comments, I must advise that you and you alone are the sole and exclusive judges of the evidence and the credibility of the witnesses.

"It is undisputed in this case that the defendant participated in the sale of marijuana, that is, he delivered the marijuana and took the money from the buyer.

"Ladies and gentlemen, it is immaterial as to whether he actually received and kept this money, or whether he delivered it to Smith.

"This evidence shows that he aided and abetted in making this sale and, in my personal view, he participated therein and must be viewed as a principal.

"The Court will instruct you further, however, as to the law on this subject of principals.

"Now, in regard to the matter of entrapment, the evidence shows that Paul Pulliam, the agent of the State, and Smith testified that he, Smith, would sell Pulliam marijuana, and arranging over the phone for the amount and price. Both testified that Smith would not make the delivery personally. Neither testified as to this phone conversation as to who would be the particular person who would make the actual delivery. Pulliam testified that the name of this defendant was not mentioned, and, of course, Smith did not know that Pulliam was an agent and Smith at the time he talked to Pulliam, it appears, did not have in mind any particular person as to who would make the actual delivery.

"Following this telephone conversation Smith on his own engaged the defendant to make this delivery at a specified time, and to receive the money, for which Smith agreed to pay the defendant $15.00. In my view of this evidence, Smith did not set the defendant up for the purpose of securing an arrest.

"Smith subsequently was to make a sale and profit from that sale of marijuana. The agent, Mr. Pulliam, merely afforded the opportunity to

It is contended by appellant that the court's statements invaded the province of the jury and deprived him of the defense that he was entrapped. The attorney general replies that the court's remarks were within the authority to comment on the evidence conferred by article VI, section 19 of the California Constitution. He quotes from *People* v. *Schwenkner,* 191 Cal.App.2d 46, 52, 53 [12 Cal.Rptr. 408], which quotes from *People* v. *Friend,* 50 Cal.2d 570, 578 [327 P.2d 97], as follows: "The extent to which a judge is free to comment on the evidence is shown by the fact that it has frequently been recognized that a judge may express his opinion as to the guilt or innocence of the defendant, so long as the province of the jury as defined by the constitutional section is not invaded. [Citations.]"

The statement has frequently been repeated since *People* v. *Ottey,* 5 Cal.2d 714 [56 P.2d 193], but the phrase "so long as the province of the jury . . . is not invaded" has always been understood to mean that "He [the judge] may not withdraw material evidence from the jury's consideration or distort the testimony, and his comments should be temperately and fairly made, rather than being argumentative or contentious to a degree amounting to partisan advocacy. The jury, as required by the constitutional provision, must remain as the exclusive arbiter of questions of fact and the credibility of witnesses, and the judge should make clear that his views are not binding but advisory only." (*People* v. *Friend,* 50 Cal.2d 570, 577-578 [327 P.2d 97].)

By Farnum's own testimony he was guilty of participating in the sale of marijuana. His only defense was that he was entrapped by Pulliam. This presented the ultimate question in the case and under the charge of the information and plea of not guilty, it was a question of fact. Upon first reading it would appear that when the judge expressed the opinion that Farnum was not entrapped he took from the jury the question of a material fact, that his statement could only have been understood by the jury as his own conclusion that Farnum was guilty, since he said, in effect, that Farnum was guilty

secure the arrest of any pusher who might arrive with the narcotic, having in mind that the purpose of his office is the arrest of persons engaged in the sale of marijuana.

"On the other hand, even though defendant did classify this deal as a favor to Smith, he did profit in a limited way by it himself, and intended to violate the law. This idea did originate with him. As I say, if these facts are true the Court is of the mind that defendant was not entrapped to violate the law."

unless he was entrapped, and that he was not entrapped. The judge may advise the jury to acquit the defendant, although the jury is not bound by the advice (Pen. Code, § 1118) but he cannot advise, much less direct, the jury to convict the defendant.

The court could properly have instructed that there was no entrapment unless Pulliam induced Farnum to commit a crime he would not otherwise have committed and that if Smith alone persuaded Farnum to deliver the marijuana there was no entrapment. The chance that the jury might make a mistake did not make it necessary for the judge to state his opinion that the defense of entrapment had not been established.

However, the question whether the court withdrew from the jury a material factual issue or merely instructed in the law, is to be determined from the evidence that was introduced rather than from the issues that were framed. In view of the evidence we cannot say that the remarks of the judge were in excess of his authority.

Entrapment is recognized as a defense to criminal prosecution for the reason that public policy forbids the unlawful enforcement of the law. It can be accomplished only by one who represents the law and uses means which are the effective cause of violation of the law by another.

In order to establish his defense it was necessary for Farnum to produce evidence that the idea that he deliver the marijuana originated with Pulliam; that he, Farnum, was not a willing violator of the law and that except for the persuasion and importunity of Pulliam he would not have committed the violation. If there had been evidence of these facts the question of entrapment would have been one of fact, it would have been error for the court to take that issue from the jury, and Farnum would have been deprived of his constitutional right of trial by jury. Upon the other hand, if there was no such evidence the question of entrapment was simply a question of law, and the court's statement was a proper one.

It is clear from the foregoing statement of the evidence that the thought of having Farnum deliver the marijuana originated with Smith; he was the one who made the proposal to Farnum and the one who overcame Farnum's reluctance to become involved. He thought he was dealing with a former customer and, of course, had no intention to get Farnum into trouble. Pulliam expected that the delivery would be made by someone who was associated with Smith in the unlawful busi-

ness. There was nothing improper in his effort to discover and arrest anyone Smith might choose to make the delivery.

The evidence established, as a matter of law, that there was no entrapment, and no unlawful enforcement of the law. Considered as a statement of law as applied to established facts the remarks of the court, although they left the jury with no alternative to finding Farnum guilty, withdrew no question of fact from the jury and did not exceed the authority of the court. ▮ If correct instructions in the law leave the jury no alternative to a finding of guilt it does not follow that the defendant has been deprived of his constitutional right of trial by jury.

▮ We are not to be understood as saying that the judgment would have been sustainable if the judge had bluntly declared his belief that the defendant had been proven guilty. The statement that "a judge may express his opinion as to the guilt or innocence of the defendant, so long as the province of the jury as defined by the constitutional section is not invaded" does not give him the right to determine in his own mind the facts upon which guilt or innocence depends and to make it clear to the jury that he is convinced of the defendant's guilt. In *Horning* v. *District of Columbia*, 254 U.S. 135 [41 S.Ct. 53, 65 L.Ed. 185], in which the judge said, "Of course, gentlemen, I cannot tell you in so many words to find defendant guilty, but what I say amounts to that," the court, by a majority, refused to reverse. Mr. Justice McReynolds dissented. Mr. Justice Brandeis dissented in an opinion in which Chief Justice White and Mr. Justice Day concurred. The opinion stated, in part, "In my opinion, such a charge is a moral command; and, being yielded to, substitutes the will of the judge for the conviction of the jury. The law, which, in a criminal case, forbids a verdict directed 'in so many words,' forbids such a statement as the above."

We know of no case and believe none is to be found in the California decisions which concedes to the judge the right to address the jury in a manner which would amount to a "moral command" to find a defendant guilty.

In the present case the judge commented upon the evidence, which he had a right to do. His concluding statement was "As I say, if these facts are true the Court is of the mind that defendant was not entrapped to violate the law." The statement fell short of a direction to find the defendant guilty.

The judgment is affirmed.

Ford, J., and Kaus, J., concurred.