[Crim. No. 3363. Third Dist. Dec. 12, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN L. BARNES et al., Defendants and Appellants.

Robert C. Bienvenu, Hoover, Lacy & Bienvenu and W. Bill Roberts for Defendants and Appellants.

Stanley Mosk, Attorney General, Doris Maier, Assistant Attorney General and Nat Agliano, Deputy Attorney General, for Plaintiff and Respondent.

SCHOTTKY, J.—The appellants James Ray Self, John L. Barnes and Billie Dean Ford were charged with violating section 496 of the Penal Code in that they did wilfully, unlawfully and feloniously buy, receive and conceal certain personal property. They were found guilty by a jury, their motion for a new trial was denied and judgment was entered. They have appealed from the judgment entered.

The evidence discloses that a quantity of tools, plumbing supplies and other personal property were taken from buildings located at a home construction site in Fremont, California. Among the articles taken were Skil saws, a Porter Cable saw, electrical wire and cord, stepladders, cooking range hoods, garbage disposals, interior hardware, toilet bowls and tanks, toilet seats, bathtubs, Herco rings, faucets and 1,500 pounds of lead.

Five days after the burglary Self, accompanied by Ford, drove to a wholesale plumbing and electrical supply store operated by one Armolio. Self told Armolio he had various types of plumbing supplies for sale. He offered to sell 12 General Electric garbage disposals for $18 each, which was $16 under the wholesale price, and the other items 15 per cent below wholesale cost.

Barnes contacted one Eckstrom who operated a retail plumbing and electrical supply store and asked if he were interested in purchasing plumbing fixtures. Several days later Barnes brought a number of chrome brass fixtures of the same make as those taken in the burglary to Eckstrom's store. He told Eckstrom that he had about 700 to 1,000 pounds of lead, a case of chrome bathroom faucets, a case of kitchen faucets, water closets, garbage disposals and sinks.

On August 28, 1961, officers of the Lodi Police Department went to Ford's home and observed a box containing a Skil saw in the driveway. Some time later Self removed the saw to his bedroom in the house. After obtaining a search warrant, the officers entered the house and discovered the Skil saw in Self's bedroom. Ford disclaimed any knowledge of the tool. The officers searched the garage where they discovered a Porter

Cable saw, a range hood, boxes of plumbing fixtures and various other items.

The Skil saw found in Self's bedroom and the Porter Cable saw were identified as items taken from the Fremont burglary.

A search of Barnes' home disclosed two Skil saws which were identified as having been taken in the Fremont burglary. Other items found in the garage were similar to stolen items.

Barnes explained his possession of this property by stating he had purchased it from a stranger whom he had met in a Stockton cardroom. The man delivered it to his home. He paid $20 for each of the garbage disposals and $15 for each of the other items. He did not learn the man's name, did not obtain a receipt, and did not ask where he had gotten the goods.

Subsequent to the arrest of the three defendants they were taken to the Fremont police station. While there the defendant Ford asked Fremont Police Sergeant Albert Guest if he could speak with him alone. Ford suggested to Sergeant Guest that it would be a good business arrangement if the three defendants were released; that he would thus assure Sergeant Guest recovery of a high percentage of the stolen property. Ford offered to contact Sergeant Guest after his release and advise him where to locate the stolen property. He said it would be in such a place that no search warrant would be necessary.

Sergeant Guest later conversed with the three defendants together. They each agreed to cooperate fully in assisting the officer to recover the balance of the stolen property if they were released from custody by the Fremont Police Department and low bail was arranged for them in San Joaquin County.

Defendant Ford told the officer further that if he did not arrange for their release he would probably never see any of the rest of the stolen property.

Each of the defendants testified at the trial.

Defendant Barnes testified that he purchased the property in question from a man he met in a cardroom and paid slightly under $300 in cash for two Skil saws, a bathroom sink and fixtures, three garbage disposals and a range hood. He gave the man his address and the goods were delivered to his home in a truck which he could not describe. He did not know the man and did not learn his name. He had no knowledge that the goods were stolen. He observed the gold paint and the initials on the saws but did not give it much thought.

Defendant Ford testified that he purchased the saws, range hoods, a water faucet, doorstops and other items from a stranger who came to his home with them and said he had been sent by Barnes. He paid approximately $469 for them. He did not notice the initials on the saws and did not know the property was stolen. He denied that he had gone to Armolio's store with defendant Self.

Defendant Self testified that he occupied a bedroom in the home of Ford. He knew nothing about Ford's possession of Skil saws or other property in Ford's garage. He removed the box containing the Skil saw from the driveway into his bedroom after he had seen it in the driveway several times. He did not attempt to sell plumbing supplies to Mr. Armolio and had not gone to his establishment.

Appellants' first major contention is that the evidence is insufficient to support the judgments. They argue that the corpus delicti of the crime of receiving stolen property was not established. We find no merit in this contention.

Appellants were convicted of a violation of section 496 of the Penal Code which provides in part: "Every person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft or extortion, knowing the same to be so stolen or obtained, or who conceals, withholds or aids in concealing or withholding any such property from the owner, knowing the same to be so stolen or obtained, is punishable . . . ."

As stated in *People* v. *Malouf,* 135 Cal.App.2d 697 [287 P.2d 834], at page 706: "The next question under such contention is whether the evidence was sufficient to support a finding that defendant knew that the diamonds were stolen. ▉ Extrajudicial statements of defendant were not admissible unless the People established the corpus delicti by evidence independent of such statements. In *People* v. *Cullen,* 37 Cal.2d 614 [234 P.2d 1], it was said at page 624: 'It is the settled rule, however, that the corpus delicti must be established independently of admissions of the defendant. ▉ Conviction cannot be had on his extrajudicial admissions or confessions without proof *aliunde* of the corpus delicti; but full proof of the body of the crime, sufficient to convince the jury of its conclusive character, is not necessary before the admissions may be received.' A prima facie showing that the diamonds were received with knowledge that they were stolen is all that is required as a foundation for the introduction in evidence of extrajudicial statements of de-

fendant; and the order of proof is discretionary. (See *People* v. *Cullen, supra,* 624-625.) Defendant was in possession of stolen diamonds when arrested. Possession of stolen property, accompanied by suspicious circumstances, will justify an inference that the property was received with knowledge that it had been stolen. *(People* v. *Lopez,* 126 Cal.App.2d 274, 278 [271 P.2d 874].) Defendant sold seven diamonds for $300, the price offered by Stillano. There was testimony (by Dessy) that the value of those diamonds was about $730. According to that testimony, defendant sold those diamonds for about one-half their value. A sale of property at a price which is disproportionately low in comparison with the value of the property may be a suspicious circumstance. (See *People* v. *Gould,* 111 Cal.App.2d 1, 7 [243 P.2d 809]; *People* v. *O'Shaughnessy,* 135 Cal.App. 104, 110-111 [26 P.2d 847].) . . ."

In *People* v. *O'Shaughnessy, supra,* there was evidence that two radios which were stolen on the night of May 29th were found on June 1st in the home of third persons who had purchased them from defendant for about one-third of their value. This was sufficient to establish the corpus delicti.

 In the case at bench the evidence discloses that Self accompanied by Ford offered to sell garbage disposals for less than the wholesale price. There was evidence that Self and Ford both had in their possession property which had been taken from the burglary. The evidence at this point is sufficient to establish a prima facie case against Self. (See *People* v. *Malouf, supra.)* The evidence is also sufficient to establish a prima facie case against Ford. Ford was concealing stolen property. He accompanied Self who was attempting to sell some property which had been stolen. This, too, is a sufficiently suspicious circumstance to meet the rule of the *Malouf* case.

The evidence as to Barnes also shows concealment of stolen property and the sale of some Herco rings. The record does not disclose that this sale was at a disproportionately low price. It is fairly inferable, however, that a sale to a dealer in such merchandise must have been made at an advantageous price. If such an inference can be drawn, then a prima facie case was established and the extrajudicial statements of the defendants were admissible.

 Barnes explained possession of the property by stating he had purchased it from a stranger he had met in a

cardroom. He did not learn the man's name, did not get a receipt, nor did he ask the stranger where he obtained them. Barnes also told Eckstrom he had made an exceptionally good purchase. ▉ Possession of stolen property accompanied by no explanation will justify an inference that the wares were received with knowledge they were stolen. *(People* v. *Lopez,* 126 Cal.App.2d 274 [271 P.2d 874].)

▉ Barnes' statement as to the manner of purchase coupled with a statement to the purchaser of the Herco rings indicates receipt of stolen property within the rule of the *Lopez* case. ▉ One of Ford's explanations of the possession of the property was that some unknown fellow had unloaded them in his driveway and he put them into his garage for safe-keeping. This, too, fits the rule of the *Lopez* case.

In addition, both Barnes and Ford testified that they had purchased the supplies from a stranger. This testimony bolsters the fact that Ford and Barnes were receivers.

▉ Self contends that there is no evidence to show that he ever had possession or concealed stolen property. A stolen saw was found in his bedroom. ▉ It is stated in *People* v. *Beck,* 71 Cal.App.2d 637, 640 [163 P.2d 41], that "Where property is found in the possession of a party other than its owner under suspicious circumstances a verdict of guilty of receiving stolen property is thereby justified." ▉ In addition, there is evidence that Self attempted to sell some of the stolen property. This is some evidence of reception and at least evidence that he aided in the concealment of stolen property. (Pen. Code, § 496, states one who aids in the concealment of stolen property is guilty.) While there is only little evidence that Self received stolen property, the evidence sustains the conviction on the theory he aided in concealing stolen property.

We conclude that there is sufficient evidence to prove that property was stolen and that it was received and concealed by Ford and Barnes. The guilty knowledge may be inferred from the circumstances of the purchase.

As to Self, the evidence is sufficient to show that he at least aided in concealing the stolen property. Guilty knowledge may be inferred in this action since Self sold some of the property at a very low price.

▉ Appellant Self also contends that the court committed prejudicial error in giving instructions on aiding or abetting and argues that there is no evidence in the case which

would warrant the giving of such instructions. The instructions complained of are as follows:

"The court further instructs the jury that it is the law of this State that all persons concerned in the commission of a crime, whether they directly committed the act constituting the offense, or knowingly and with criminal intent aided and abetted in its commission, are equally guilty thereof."

"For one person to aid and abet another in the commission of a criminal offense means to knowingly and with criminal intent aid, promote, encourage or instigate by act or counsel, or by both act and counsel, the commission of such offense."

This contention of appellant Self cannot be sustained inasmuch as the statute (Pen. Code, § 496) condemns aiding in concealing, and the evidence shows that Self did aid in concealing the property.

Appellants' final contention is that the trial court erred in instructing the jury that it was their duty to reach a verdict if they could conscientiously do so. The record shows that the jury retired to deliberate at 12 noon on March 21, 1962. At 7:05 p.m. the court directed the return of the jury into the courtroom for the purpose of making dinner arrangements for them. The court at that time inquired of the jury foreman as to the progress of the jury's deliberations. The foreman stated that the members of the jury were unanimous relative to defendants Ford and Barnes but were not unanimous and stood 9 to 2 relative to defendant Self.

The court then gave the instruction complained of and ordered that the jurors forthwith have dinner and thereafter resume their deliberations.

At 10:02 p.m. the jury returned to the courtroom and announced its verdicts of guilty as to each defendant.

Appellant Self urges that the court's instruction was coercive and constituted prejudicial error. He relies upon this court's decision in *People* v. *Baumgartner,* 166 Cal.App.2d 103 [332 P.2d 366], in which this court held that an identical instruction was ground for reversal.

However, as pointed out by respondent, the circumstances under which the instruction was given in the instant case at bench were vitally different from those found in the *Baumgartner* case. There, the fatal prelude to the instruction was the jury foreman's statement to the court in the presence of the jury that they stood 11 to 1 *for conviction.* The aftermath was a verdict of guilty in 40 minutes when the jury had been deliberating for 6 hours.

In the *Baumgartner* case the record showed that the court knew that the jury stood 11 to 1 for conviction and this court held that the giving of the instruction amounted to coercion and was error. However, this court went on to say: "It should be said that the instruction was proper and apt enough had the court not been informed to the knowledge of all as to the fact that the jury stood 11 to 1 for conviction. In such situations the instruction used was worked out long ago as to form and has been frequently used." Upon the record in the case at bench, we do not believe that the court committed prejudicial error in giving the instruction complained of.

No other points raised require discussion.

The judgments are affirmed.

Peek, P. J., and Pierce, J., concurred.