[Crim. No. 18845. Second Dist., Div. Two. May 17, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
IGNACIO RAMIREZ FLORES, Defendant and Appellant.

## Counsel

Albert D. Silverman, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Allan J. Besbris, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**ROTH, P. J.**—This appeal is taken from a judgment convicting appellant for the possession of heroin (Health & Saf. Code, § 11500).

The sole assignment of error on appeal is as follows: "The trial court's comments to the jury influenced their verdict, depriving the appellant of his constitutional rights to trial by an impartial jury and of due process of law."

We conclude that the trial court transgressed the limits of permissible comments authorized by article VI, section 10 of the California Constitution[1] as interpreted in *People* v. *Brock,* 66 Cal.2d 645 [58 Cal.Rptr. 321, 426 P.2d 889], and in *People* v. *Friend,* 50 Cal.2d 570 [327 P.2d 97].

### Summary of the Incriminating Evidence

Officer Muntz testified for the prosecution, giving his version of what occurred on April 3, 1970. He stated that on that evening he observed the appellant walking down the center of the street and that he appeared to be staggering. His partner stopped the patrol car approximately 30 feet behind and he exited the passenger side and approached the appellant. When he was still some 10 feet away he observed the appellant turn and look at him. He then turned back, put his right hand into his right-front pants pocket. He saw the hand come out and observed the appellant make a pitching motion at which time he saw an object leave his hand and slide toward the dirt parkway. He went over and retrieved the object, observing it to be a green-colored balloon.

After pitching the object the appellant increased his pace to a fast walk towards the sidewalk. The officer's partner caught him and walked him

---

[1]Article VI, section 10, states in relevant part: "The court may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause."

back to where he was standing. In the meantime he had observed the contents of the balloon which consisted of a brown-white powder resembling heroin and he placed the appellant under arrest for the possession of heroin.

He stated further that the appellant was carrying a small paper sack which contained a half-pint of whiskey, a bar of soap and a pack of 20 rubber balloons. They observed one male and one female walking in their direction and the paper sack and the contents were given to the woman.

At the area where the balloon was found there was an overhead light about six feet away and the appellant was illumed by the headlights of the patrol car, according to the officer. The parties stipulated that an expert forensic chemist had examined the contents of the balloon and if called would testify that it contained 2.5 grams total weight of powdered heroin.

Appellant testified that after he left work on April 3, 1970, he stopped at a store and purchased two bottles of whiskey, soap, toothpaste, milk, and cosmetics. These items, he said, were placed in a paper bag by the store keeper. He was on his way home which was about a block away from the store and was accompanied by three other persons who lived in the immediate vicinity but whose names he did not know.

He then heard an order from a police officer who was in a police unit about 30 feet away directing him to stop. However, he kept on walking, thinking he had better ditch the whiskey he was carrying. The police came over and started searching the area around him. They found a balloon on the ground a few feet from where he was standing. He denied throwing anything away from his person in the presence of the officer.

In the course of his direct examination given at the hearing on his motion to suppress the evidence appellant testified as follows: "Q. What happened to the groceries? A. I threw them away. Q. No. You were carrying them? A. Yes. Q. You didn't drop them? A. No. Q. Did you throw the whiskey away? A. No. He [the officer] threw it out."

A few days later at the trial appellant testified on direct examination as follows: "Q. Were you facing the officers when they asked you what you had in the bag? A. Yes, but I kept walking. Q. Why was it—why did you keep walking? A. Because I had that bottle of whiskey. I was afraid of the bottle of whiskey I had. Q. Did you keep the bottle of whiskey inside the bag? A. Yes. Q. Did you throw anything in the presence of the officers? A. No. Q. Did you have possession of any balloon of heroin? A. No; if I had, I'd have swallowed it. . . . Q. Do you recall what became of your bag that evening? A. He took it away from me; he kept it."

On cross-examination appellant testified as follows: "Q. Mr. Flores, be-

sides that bottle of whiskey you had in that bag, what else did you have in the bag? A. Toothpaste, soap, and dressing for my hair. Q. Isn't it true that included in that bag were approximately 20 balloons? A. It would only be if I could look into the bag now to say that that might be true; I don't know. Q. Well, didn't you know what was in that bag? A. No. Q. Where did you get the bag? A. I bought it, I got it when I bought all that stuff that I bought."

On redirect examination appellant answered questions put to him by his counsel as follows: "Q. Mr. Flores, if you did have a balloon, I am not saying you did, would you have thrown it in front of the police officer? A. Of course not. Q. If you threw it in front of the police officer, there is a good chance that he would see it, is that correct? A. Yes. Q. If you did have something that you shouldn't have, and it was about the size of that balloon, what would you do with it? A. I would have kept it in my pocket. Q. Or would you have tried to swallow it? A. No. It's awful big. MR. WEBB: I have nothing further."

### The Court's Comment

After the jurors had deliberated approximately three hours they were recalled to the courtroom. Their foreman reported that they had not yet been able to reach a verdict and that they were divided "5 to 7." The court thereupon proceeded to read to the jury a statement in language identical to that given by trial judges in the cases of *People* v. *Baumgartner,* 166 Cal. App.2d 103, 105-106 [332 P.2d 366]; *People* v. *Barnes,* 210 Cal.App.2d 740 [26 Cal.Rptr. 793]; *People* v. *Ortega,* 2 Cal.App.3d 884, 896 [83 Cal.Rptr. 260].

The court then analyzed the evidence of the two testifying witnesses, defendant and Officer Muntz, commented on their respective credibility and stated its convictions as to defendant's guilt in terms which are set forth in their entirety in the footnote.[2]

The comments of the court made to the jury after it was advised

---

[2] "At this time, however, and for the purpose of assisting you in deciding this case, I am permitted by the Constitution of the State of California to comment on the evidence, and the testimony and the credibility of any witness. Now I intend to do that.

"Ladies and gentlemen, I think it is a very simple, straightforward case. I, along with you, heard the evidence. I have perhaps heard more evidence that you have, because I have been in this business for some period of time. As I think was very capably pointed out to you by both of the lawyers in this case, both of whom are fine lawyers and did a good job, it's really a question of deciding who is telling the truth and who is not telling the truth in this particular case.

"In deciding, of course, who is telling the truth and who is not telling the truth, it seems to me that you have to look to the motivation behind the stories that are

that the jury was "split five to seven," were an error which had the effect of usurping the jury's constitutional function as the sole judge of the facts to determine defendant's guilt or innocence.

■ No hard and fast rule can be evoked to arithmetically determine the extent to which a judge may or may not comment on the evidence or the credibility of the witnesses. Each case must necessarily turn upon the con-

---

being told. Why did the witness get on the stand and say what he said? Now, certainly, *if you believe the officer who testified in this case, you must find this defendant guilty*.

"There is no question but what this evidence which we have in this case is heroin. That was agreed to by the defendant, because they agreed that the chemist would testify that it was heroin. There is no question but what this is the package that was out there in the field, because even the defendant admitted when he was on the stand that he saw it before. He said he didn't see it until he was in the car, but he did see it before; so this is the contraband. Now, certainly I don't think the policeman was carrying it around in his pocket and just said that he found it out there in the field. His story, if you remember, was that when he saw the defendant, the defendant in a very obvious motion, not furtive or hidden, cast this thing away. If you remember, he said he saw it leave the defendant's hand, and that his eye followed its trail. It wasn't as though he threw it over into a big field or threw something into a big field with a bunch of bushes, or anything of that nature. He threw it right there on the ground, and he saw it leave the defendant's hand and hit the ground, and went over and picked it up. *If you believe the officer to that extent, as I say, you must find this defendant guilty*.

"Now, the defendant denied it. He denied that he threw it. He said that he just walked when he heard the policeman; he didn't want the policeman to find some whiskey in the bottle. *To me that's not credible*. I don't think that the motivation of these two witnesses is anywhere near the same. The defendant obviously doesn't want to be convicted; he has a strong motive to say what he said. But let's look at the motive of the police officer. There was nothing indicated in his testimony or in cross-examination, and he was ably cross-examined, to show that he had any hostility or antagonism against this particular defendant. There is no fracas. They weren't fighting; he didn't have cause to get mad at the defendant. The defendant didn't really resist arrest in that sense; he didn't have to use any force. He even indicated, I think, that he wasn't particularly mad at this defendant by allowing his friend to take his property home for him instead of taking the stuff, which was of perishable nature, some of it, and locking it up. He didn't indicate any reason whatsoever, nor was there even by implication any reason suggested where that policeman should lie. *For my own sake, I would not have spent two minutes in deciding this case because I would have decided that the defendant was guilty*. But of course the reason we have juries is so that we have 12 minds instead of one deciding these cases, and the matter very rightfully is submitted to you. I certainly, if you go into the other room and can decide this case, and decide that I am wrong, and that this defendant is innocent, will bear you no ill will whatsoever. I can certainly understand how reasonable minds can differ; and if all of you have a doubt, and it's a reasonable doubt, not just a mere suspicion of some sort but a reasonable doubt that he is guilty, why, fine.

"I reiterate the important thing is to decide this case now, with this jury, with this trial, rather than having to go to the trouble to everybody concerned; the defendant, the lawyers, the people, the courts and another jury, to have to decide a case which you are just as capable of deciding as anybody else. That's really what I am trying to talk you into. I am not trying to talk you into convicting him. I just want you to know how I look at it, for what help it may be. My comments are intended to be advisory only; certainly they are not binding on you, and you are the

text and extent of the comments and the peculiar circumstances under which comment is made. (*People* v. *Scott,* 53 Cal.App.2d 558, 564 [348 P.2d 882] (overruled on other grounds *People* v. *Morse,* 60 Cal.2d 631, 649 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]); *People* v. *Marrone,* 210 Cal.App.2d 299, 311 [26 Cal.Rptr. 721]; *People* v. *Schwenkner,* 191 Cal. App.2d 46, 52 [12 Cal.Rptr. 408].)

 In our opinion, however, the comments at bench contained a clear statement that the court believed defendant guilty.

*People* v. *Friend, supra,* 50 Cal.2d 570, held that the judge "may express his opinion as to the guilt or innocence of the defendant, so long as the province of the jury . . . is not invaded." (*Id.* at p. 578.) *Friend* cited a succession of authorities to support this holding. However, as one court has put it, "*Friend* was clarified in *Brock* [*People* v. *Brock,* 66 Cal.2d 645 (58 Cal.Rptr. 321, 426 P.2d 889)]" with the result that a naked statement of belief in a defendant's guilt is subject to vigorous scrutiny. (*People* v. *George,* 259 Cal.App.2d 424, 430-431 [66 Cal.Rptr. 442].) Justice Peters, speaking for the court in *Brock,* distinguished or explained each of the authorities cited in *Friend* for the holding quoted above, and came to the conclusion that the "quoted language [from *Friend*] should not be understood as warranting general statements as to guilt or innocence where the evidentiary basis for the comment is not explained to the jury." (*People* v. *Brock, supra,* at p. 655.)

A first reading of the trial judge's comments may indicate that here indeed was an instance where the trial judge assisted the jury "in determining what evidence has a bearing on the disputed issues in the case and . . . in weighing the evidence. . . ." (*People* v. *Brock, supra,* at p. 650.) Such assistance, we have been told, should not be discouraged. (*People* v. *Ottey,* 5 Cal.2d 714, 722-726 [56 P.2d 193].) It is an exercise of a judicial right granted by our state Constitution (Cal. Const., art. VI, § 10) which has received statutory enactment. (Pen. Code, §§ 1093, 1127.)[3]

exclusive judges of the questions of fact submitted to you, and of the credibility of the witnesses. You should disregard all or any of the comments that I have made if they do not agree with views of the evidence or the credibility of the witnesses.

"I am going to ask you to go back into the jury room and give it another try, will you please? Thank you.

"(Whereupon the jury retired to deliberate at 11:22 a.m.)" (Italics added.)

[3]The general rule in the several states appears to be contrary to that found in article VI, section 10 of our Constitution. (See cases collected in 23 C.J.S. Criminal Law, § 993(a); and Comment, 32 So.Cal.L.Rev. 311.) Article VI, section 10 which was originally brought by a 1934 amendment made a "fundamental change" in the California trial judge's right to comment (*People* v. *Brock, supra,* 66 Cal.2d 645, 650) and has been termed to be an exception to the general rule. (Comment, *supra,* 32 So.Cal.L.Rev. 311.) The federal rule that it is improper to comment on

Defendant's entire case rested on his testimony that he had not thrown the contraband away, that, in fact, he had never possessed it. Thus, as the trial judge pointed out initially, . . . it's really a question of deciding who is telling the truth and who is not telling the truth in this particular case"—making reference to the testimony of the police officer that he saw defendant throw the contraband away. In its deliberations the jury was therefore faced with the naked question of whom to believe; and that it did not find this an easy one to answer, is shown by its return to court "split five to seven."[4]

The trial judge's analysis of the credibility of the defendant and the arresting officer culminated in the remarks: "Now, the defendant denied it. He denied that he threw it. He said that he just walked when he heard the policeman; he didn't want the policeman to find some whiskey in the bottle. *To me that's not credible.*" (Italics added.) Not satisfied with a summary rejection of defendant's entire case, the trial judge thereupon returned to an examination of the officer's motives in testifying (". . . he [the officer] wasn't particularly mad at this defendant . . . he [the officer] didn't indicate any reason whatsover, nor was there even by implication any reason suggested where that policeman should lie") and concluded, in net effect, that the prosecution's witness had told the truth, and that the defendant had not.

We do not know, of course, whether the veniremen debated the question of defendant's lack of honesty or the officer's possible error of judgment when he observed defendant's actions on the street at 8:30 p.m. Whatever the controversy in the jury room, after listening to the trial court's comments the jury could have had little doubt that the judge, who had "been in this business for some period of time" thought the officer to be right, and the defendant to be a liar.

Assuming the trial judge's analysis of the evidence affecting the credibility of the witnesses was proper, the added unequivocal statement of the trial judge "For my own sake, I would not have spent two minutes in deciding this case because I would have decided that the defendant was guilty," left nothing for the jury to decide.

 Acting upon a constitutional and statutory right to comment on

guilt unless the undisputed evidence establishes it was rejected in *Brock.* (*People* v. *Thompson,* 252 Cal.App.2d 76, 93 [60 Cal.Rptr. 203], cert. den. 392 U.S. 930 [20 L.Ed.2d 1388, 88 S.Ct. 2276].)

[4]The trial court very properly refrained from inquiring whether the split was in defendant's favor, or against him. However, the court's restraint in this regard does not in and of itself vitiate the conclusion that the jury was coerced into reaching a verdict. (*People* v. *Carter,* 68 Cal.2d 810, 819, fn. 7 [69 Cal.Rptr. 297, 442 P.2d 353].)

the evidence, a trial judge may summarize the evidence critically. (*People* v. *De Arkland,* 262 Cal.App.2d 802, 815 [69 Cal.Rptr. 144]; *People* v. *Shannon,* 260 Cal.App.2d 320, 330 [67 Cal.Rptr. 207].) The summary should be more than a "colorless recital." (*People* v. *De Moss,* 4 Cal.2d 469, 477 [50 P.2d 1031].) However, there is concomitant restraint upon the judge that the comment be fair, and not argumentative. (*People* v. *Huff,* 134 Cal.App.2d 182, 188 [285 P.2d 17], cited in *People* v. *Shannon, supra,* at p. 331.)

A judge's power to comment on the evidence, however, is not unlimited and he may not withdraw material evidence from the consideration of the jury in so doing. (*People* v. *Brock, supra,* 66 Cal.2d 645, 650; *People* v. *Friend, supra,* 50 Cal.2d 570, 577.)[5]

The summary destruction of defendant's entire case—his credibility— and the forceful demonstration of the officer's probity, clinched with the judicial imprimatur of guilt, was tantamount to a prosecutor's plea, and exceeded the bounds of even "colorful" analysis. In *People* v. *Smith,* 267 Cal.App.2d 155 [72 Cal.Rptr. 696], judicial comment that "the fact that he [the defendant] told a story which was not truthful" reflected adversely on his credibility, was held to be prejudicial. (*Id.* at p. 165.) The language appearing in *Smith* concerning the cited comment in that case applies to the series of comments at bench: "The vice of such comment[s] was that the judge effectively took the issue of defendant's credibility away from the jury." (*People* v. *Smith, supra,* at p. 165.)

■ When the trial judge's remarks transgress the bounds of critical comment and assume the complexion of partisan advocacy and conclude with an expression of a defendant's guilt such comment is prejudicial as a matter of law. This is the tenor of the *Brock* decision.

The court in *Brock,* implicitly recognizing that constitutional and statutory provisions in California confer a right on a trial judge of this state to comment on evidence broader in scope than that which exists in federal courts,[6] says at page 651: "The federal courts have held that it is improper for a trial judge to state that he believes the defendant guilty, unless the undisputed evidence establishes guilt. (*United States* v. *Murdock, supra,* 290 U.S. 389, 393-394 [78 L.Ed. 381, 384-385, 54 S.Ct. 223]; *United States*

---

[5]*Friend,* in the original and forceful phrasing, states this principle as follows: "He [the judge] may not withdraw material evidence from the jury's consideration or distort the testimony, and his comments should be temperately and fairly made, rather than being argumentative or contentious to a degree amounting to partisan advocacy." (*People* v. *Friend, supra,* at p. 577.)

[6](*People* v. *Thompson, supra,* 252 Cal.App.2d 76, 93, cert. den. 392 U.S. 930.) See footnote 3, *supra.*

v. *Woods,* 252 F.2d 334, 336 (and cases cited).) And it has been stated that the power to comment does not give the trial judge the right to determine in his own mind the facts upon which guilt or innocence depends and to make it clear to the jury that he is convinced of the defendant's guilt. (*People* v. *Farnum,* 242 Cal.App.2d 310, 315 [citation].)" If the judge's explanation of the "evidentiary basis" of his comment on a defendant's guilt develops into a plea for conviction on the grounds that the defendant must have been lying when he testified, such comment on guilt, even though preceded by a dispassionate analysis of the evidence is tantamount to an argument to convict. (See *People* v. *Brock, supra,* 66 Cal.2d 645, 655-656.)

In determining whether the error committed by the trial court compels a reversal of the judgment, we must apply the California test of reversible error. (*People* v. *Ottey, supra,* 5 Cal.2d 714, 726; *People* v. *Thompson, supra,* 252 Cal.App.2d 76, 93; *People* v. *Graham,* 156 Cal.App.2d 525, 528 [319 P.2d 677].) In view of the overriding fact that the entire case hinged on the defendant's credibility, we cannot discount the jury's obvious difficulty in reaching a verdict in this "simple" case. Error of the kind committed here has been held to be nonprejudicial where the evidence of guilt was overwhelming. (*People* v. *Smith, supra,* 267 Cal.App.2d 155, 164; *People* v. *Shannon, supra,* 260 Cal.App.2d 320, 333; *People* v. *George, supra,* 259 Cal.App.2d 424, 431-432; *People* v. *Thompson, supra,* 252 Cal.App.2d 76, 93.) Even though the facts at bench are not complex, we cannot say that the evidence of guilt—especially in view of the jury's disagreement—was overwhelming; nor can we agree with the suggestion, implicit in the trial court's comments, that a case which turns on the credibility of one witness against another, is "simple" by virtue of the fact that there were only two witnesses. The resolution of the conflicts between the testimony of a defendant and that of the arresting policeman is and should be a jury decision. When the jury is dispossessed of that decision by remarks from the bench which effectively dispose of it, the error is prejudicial. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]; Cal. Const., art. VI, § 13.)

■ Defendant's failure to object at trial does not preclude urging the error on appeal. (*People* v. *Terry,* 2 Cal.3d 362, 398 [85 Cal.Rptr. 409, 466 P.2d 961], and cases cited thereat.)[7] An admonition by the trial judge could not have cured the prejudice attaching to the entire course of the commentary.

---

[7]Even assuming that the trial judge would have appreciated upon objection by defendant's counsel the lengths to which his "commentary" on the evidence had taken him, it cannot be assumed that the jury could expunge the impact of the highly partisan remarks from their minds.

The judgment is reversed. The purported appeal from the order denying the motion for a new trial is dismissed.

Fleming, J., concurred.

**HERNDON, J.**—I dissent. Applying the law as enunciated in *People* v. *Brock*, 66 Cal.2d 645 [58 Cal.Rptr. 321, 426 P.2d 889], and in *People* v. *Friend*, 50 Cal.2d 570 [327 P.2d 97], and in the numerous other precedents cited and discussed in those two decisions, I conclude that the trial court did not transgress the limits of permissible comment authorized by article VI, section 10 of the California Constitution in its provision that "The court may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause."

It is my opinion that in the evidentiary context of this case the comment of the trial judge was entirely reasonable. Undoubtedly it was his laudable purpose to avoid the necessity for a retrial of this case of classic simplicity with the attendant cost to the suffering taxpapers of this county and state and the additional burden upon our already failing judicial system, staggering as it is under an intolerable backlog of untried cases.

In *People* v. *Friend, supra,* 50 Cal.2d 570, at page 578, the Supreme Court stated: "The extent to which a judge is free to comment on the evidence is shown by the fact that it has frequently been recognized that a judge may express his opinion as to the guilt or innocence of the defendant, so long as the province of the jury as defined by the constitutional section is not invaded. [Citations.]"

In *People* v. *Brock, supra,* 66 Cal.2d 645, 654-655, the Supreme Court reaffirmed and explained the decision in *People* v. *Friend* as follows: "The statement in *Friend* and the other cases that a judge 'may express his opinion as to the guilt or innocence of the defendant' should be understood as meaning that proper comments of the judge as to evidence are not erroneous merely because the jury might conceivably understand such comments as reflecting his opinion as to guilt or innocence, and the quoted language should not be understood as warranting general statements as to guilt or innocence *where the evidentiary basis for the comment is not explained to the jury.*" (Italics added.)

In this case, as the majority opinion correctly discloses, the trial judge was careful to analyze the testimony of the witnesses and to explain to the jury "the evidentiary basis for [his] comment" as required by *Brock*. The trial court here did not commit the error which was the major reason given

for the reversals in *Brock* and in *People* v. *Smith,* 267 Cal.App.2d 155, 160-161 [72 Cal.Rptr. 696], that is, the erroneous instruction that the jury had the "right and duty to exercise the same independence of judgment in weighing the judge's comment on the evidence as you are entitled to exercise in weighing the testimony of the witnesses. . . ."

I heartily concur in the observations in the majority opinion that no hard and fast rule can be applied in determining the extent to which a judge may or may not comment on the evidence or the credibility of the witnesses and that each case must necessarily turn upon the context and extent of the comments and peculiar circumstances under which comment is made.

Further, I agree that "[a]cting upon a constitutional and statutory right to comment on the evidence, a trial judge may summarize the evidence' critically. (*People* v. *De Arkland,* 262 Cal.App.2d 802, 815 [69 Cal.Rptr. 144]; *People* v. *Shannon,* 260 Cal.App.2d 320, 330 [67 Cal.Rptr. 207].)" Permissible comment "is not confined to a colorless recital, by way of summing up the facts. Such a conclusion would destroy and render ineffectual the very purpose of the constitutional amendment." (*People* v. *De Moss,* 4 Cal.2d 469, 477 [50 P.2d 1031].)

Further, as the majority point out, errors of the kind asserted here have been held to be nonprejudicial where the evidence of guilt was overwhelming. (*People* v. *Smith, supra,* 267 Cal.App.2d 155, 164; *People* v. *Shannon, supra,* 260 Cal.App.2d 320, 333; *People* v. *George,* 259 Cal.App.2d 424, 431-432 [66 Cal.Rptr. 442]; *People* v. *Thompson,* 252 Cal.App.2d 76, 93 [60 Cal.Rptr. 203].)

The testimony of the arresting officer in this case was clear, consistent and convincing. The testimony of appellant, on the other hand, was so inherently improbable in several respects and so self-impeached with contradictions and inconsistencies that when read in its entirety it leads to the unavoidable conclusion that the trial judge was fully justified in regarding it as a poorly woven fabrication although his comment did not characterize it in those terms.

At the hearing on his motion to suppress evidence appellant testified that he "threw away" his bag of groceries when the officer approached him. A few days later at the trial he testified that "the officer took it away from me. He kept it." On cross-examination appellant was asked what he had in his grocery bag besides the bottle of whiskey. He answered "Toothpaste, soap, and dressing for my hair." When asked "Isn't it true that included in that bag were approximately 20 balloons?" he answered, "It would only be if I could look into the bag now to say that that might be true; I don't know.

Q. Well, didn't you know what was in the bag? A. No. Q. Where did you get the bag? A. I bought it. I got it when I bought all that stuff I bought."

When asked on direct examination whether or not he had been in "possession of any balloon of heroin," he answered, "No; if I had, I'd have swallowed it." On redirect appellant gave these further answers: "Q. If you did have something that you shouldn't have, and it was about the size of that balloon, what would you do with it? A. I would have kept it in my pocket. Q. Or would you have tried to swallow it? A. No. It's awful big." In view of this last evidently surprising answer, it is understandable that defense counsel immediately terminated his redirect examination with the announcement "I have nothing further."

It is true, of course, that the judge expressed his opinion that the defendant was guilty, but it definitely is not true in my opinion that his comment invaded the province of the jury. On the contrary, in concluding his comment the judge was careful to emphasize the ultimate powers and responsibilities of the jury. He commented that "the reason we have juries is so that we have 12 minds instead of one deciding these cases, and the matter very rightfully is submitted to you." He made it clear to the jurors that they should feel free to disagree with his comment and that he could "understand how reasonable minds can differ." Finally, he reiterated the proposition that the defendant was entitled to acquittal unless the jurors were satisfied that his guilt had been proved beyond a reasonable doubt.

The majority acknowledge that "[a] first reading of the trial judge's comments may indicate that here indeed was an instance where the trial judge assisted the jury 'in determining what evidence has a bearing on the disputed issues in the case and . . . in weighing the evidence.' (*People* v. *Brock, supra,* at p. 650.) Such assistance, we have been told, should not be discouraged. (*People* v. *Ottey,* 5 Cal.2d 714, 722-726 [56 P.2d 193].)"

My study of the judge's comment has confirmed my first impression that what the judge said in this case was reasonably and properly designed to serve the salutary purposes underlying the constitutional and statutory provisions authorizing such comment. The truth that the jury did not construe the judge's comment as directory in purpose or effect is established by the fact that after hearing it they retired and deliberated some two or three hours before reaching their verdict.

I would affirm the judgment.

A petition for a rehearing was denied June 2, 1971, and respondent's petition for a hearing by the Supreme Court was denied July 14, 1971.