[No. B157608. Second Dist., Div. Four. June 27, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
GRAIL WAYNE PERKINS, Defendant and Appellant.

COUNSEL

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Ana R. Duarte and Jennifer A. Jadovitz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CURRY, J.**—Grail Wayne Perkins appeals from the judgment entered following a jury trial that resulted in his felony convictions of first degree burglary (Pen. Code, § 459; count 3),[1] arson (§ 451, subd. (b); count 4), making terrorist threats (§ 422; count 5), and his misdemeanor convictions of disobeying a domestic relations court order (§ 273.6, subd. (a)); counts 6, 7). He was sentenced to prison for an eight-year term on count 4 (arson).

Appellant contends he was deprived of his right to effective assistance of counsel and denied his rights to a fair trial and to due process under the federal and state Constitutions (U.S. Const., 6th &14th Amends; Cal. Const., art. I, §§ 7, 15, 24), because "the trial court engaged in a systematic 'pattern of judicial hostility,'" which consisted of continual interference with defense witnesses, disparaging comments regarding defense counsel, and erroneous exclusion of crucial defense evidence. Alternatively, he contends his attorney was ineffective (U.S. Const., 6th Amend.) in failing to object to such judicial misconduct. He also contends the abstract of judgment must be corrected, because it erroneously reflects he was sentenced to an eight-year term on his burglary conviction.

In his supplemental opening brief, he contends the matter must be remanded for resentencing for the reason that the trial court simply stayed imposition of sentence on his burglary conviction instead of first imposing a determinate term and then staying such term.

Based on our review of the record and applicable law, we reverse and remand for a new trial. We conclude four material instances of judicial misconduct prejudicially deprived appellant of his rights to due process and a fair trial. We deem appellant's remaining claims of error, each of which we have examined, to be moot.

### FACTUAL SUMMARY

█  We view the evidence in the light most favorable to the People and presume the existence of every fact the trier could reasonably deduce from the evidence that supports the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) The following summary is based on this appellate standard of review.

In 1998, appellant married Madiha Fields. She had been married before and had a minor daughter, Danielle. In 1998 Madiha bought a house on

---

[1] All further section references are to the Penal Code.

Ventura Street in Altadena as her sole property with funds she had acquired during a previous marriage. Appellant was angry that Madiha took title in her name only, and fought with her over her separate funds.

On August 18, 1999, after appellant twice threw Madiha into the swimming pool, Madiha and Danielle left their home. When they returned later that evening, appellant appeared to be intoxicated. She called 911 in fear for her life and Danielle's. After the police arrived, Madiha and Danielle departed for a friend's house.

On August 19, 1999, Madiha obtained a temporary restraining order (TRO) against appellant. Appellant became angry and confrontational when served with the TRO and refused to leave. Eventually, a supervisor in the Los Angeles County Sheriff's Department managed to convince him to challenge the TRO in court and to leave with his belongings.

On August 20, 1999, appellant showed up as a locksmith was changing the locks on the doors of the house. Madiha told him she would call 911 if he did not leave. Appellant angrily pushed her. He left with all the paperwork and other items when she went for the telephone. Around 11:00 a.m., Madiha went to the sheriff's station and reported his violation of the TRO.

Around 3:20 p.m. the same day, Madiha saw appellant with a gas can in the carport and called 911. Danielle also saw him holding a big red can with a handle. When Danielle did not respond to appellant's request to open the door, he kicked the door down and entered. After appearing to throw gasoline in the hallway, he ran into a bedroom. Madiha told the 911 operator that appellant had a gas can in his hand and was going to set fire to the house. Madiha and Danielle then went out the kitchen door.

After observing smoke, she saw appellant moments later exiting the house. He got into his car and drove through the latched metal gate. He then pulled over and told her he would be back to kill her. As he drove away, Madiha saw flames and noticed smoke was everywhere.

Edward Nordskog, a detective in the sheriff's department arson and bomb unit, investigated the scene with an accelerant-sniffing dog. He opined the fire in the hallway and the fire in the master bedroom were two separate fires. A gas can was found under a desk in Danielle's bedroom, which also sustained fire damage. The living room was heavily damaged by fire as well. Nordskog further opined that an accelerant had been used. Phil Teramoto, a criminalist, also opined an accelerant was used to start the fire. No odor of gasoline was on Madiha nor any odor of accelerant was on Danielle.

Nordskog also opined that the person who set the fire could have arrived at the Pasadena courthouse 15 to 30 minutes later. The fire call went out around 3:30 p.m. Appellant told him that he had gone to the courthouse around 1:00 p.m., left between 2:15 and 2:40 p.m., and returned sometime between 3:45 and 4:00 p.m.

On August 23, 1999, appellant showed up at the Bank of America branch where both he and Madiha worked.

Following his arrest that same day, appellant claimed he knew nothing about the fire. He admitted violating the TRO by going home earlier that day and taking some items. He stated that he then went back to the court. He admitted keeping a gas can in his car. He indicated that there was a small gas can in the laundry room. When told a second can had been found in the house, he said he had borrowed one several months before from a neighbor.

Appellant asked Nordskog to inspect various documents he claimed were "evidence" of Madiha's involvement in "fraudulent conduct." Appellant said that on August 19 he took all documents which he believed might be important from the house. He added a fire could have destroyed such documents. Nordskog believed some of the documents had been altered. When told he was an arson suspect, appellant responded that the walls were too high and that no one could have seen him that day.

During an inspection of appellant's vehicle, white paint transfers on the front bumper were found which could have been from the gate.

In his defense, appellant presented alibi evidence to show that he was in the Pasadena courthouse at the time the fire broke out, and that Madiha, who had questionable past financial dealings, was the one who set the fire in order to collect the insurance proceeds. Douglas Allen, a defense expert, opined the fire could not have been started by appellant as described in Madiha's statement.

Madiha testified on rebuttal that she did not alter any of the documents she had submitted to First Capital regarding her house purchase.

### DISCUSSION

1. *Prejudicial Judicial Misconduct Shown*

Appellant contends the trial court committed misconduct by its continual interference with defense witnesses, by making disparaging comments regarding defense counsel, and by erroneously excluding crucial defense

evidence. We agree the trial judge committed misconduct which prejudiced appellant.

■ Initially, we conclude appellant has not forfeited his claims of misconduct by failing to make the appropriate objection before the trial judge. As a general rule, judicial misconduct claims are not preserved for appellate review if no objections thereto were made at trial. (See, e.g., *People v. Hines* (1997) 15 Cal.4th 997, 1041 [64 Cal.Rptr.2d 594, 938 P.2d 388].) Nonetheless, a defendant's failure to object does not preclude review "when an objection and an admonition could not cure the prejudice caused by" such misconduct. (*People v. Terry* (1970) 2 Cal.3d 362, 398 [85 Cal.Rptr. 409, 466 P.2d 961]; see, e.g., *People v. Flores* (1971) 17 Cal.App.3d 579, 588 [95 Cal.Rptr. 138]; see also *People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 647-650 [130 Cal.Rptr.2d 873] [review where objection would have been futile].) This is the case here.

■ We further conclude the record reflects that the trial judge was intemperate in his examination of appellant during the presentation of his defense and that in four specific instances, the judge prejudicially interfered with such defense and conducted himself as though he sided with the People. As we shall now demonstrate, such misconduct necessitates reversal of the judgment and remand for a new trial.

■ "A trial judge may examine witnesses to elicit or clarify testimony [but he or she] must not become an advocate for either party or under the gui[s]e of examining witnesses[,] comment on the evidence or cast aspersions or ridicule on a witness." (*People v. Rigney* (1961) 55 Cal.2d 236, 241 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186].)

■ Appellant points out that it was critical for his alibi defense to establish that he was at the Pasadena courthouse around 3:30 p.m., the time the fire was ignited. At trial, he testified that he was at that location around that time. Salvador Alvarado, a court bailiff, testified appellant was present between 3:35 p.m. and 4:00 p.m. Evidence was admitted to show that the drive from Madiha's house to the courthouse took approximately 11 to 20 minutes.

The four instances of prejudicial misconduct occurred during the trial judge's examination of appellant during the presentation of this defense.

The first and second instances occurred during direct examination, when the court asked appellant various questions concerning his exit from the Pasadena courtroom. Appellant testified that he was in a Pasadena courtroom

when a woman, who was seeking a restraining order against her former husband, was testifying on the stand. When court adjourned at 4:00 p.m., the judge rose and was about to walk out when appellant tried to attract the judge's attention. We pick up the exchange at this point of appellant's testimony:

"[Defense Counsel]: All right. And then the court adjourned at 4:00; is that correct?

"[Appellant]: Yes.

"[Defense Counsel]: All right. And what did you do?

"[Appellant]: As the judge got up to walk out, I tried to get the judge's attention, and she was saying there was nothing happening today.

"[Defense Counsel]: You were trying to get the judge's attention; correct?

"[Appellant]: Yes. I was saying, 'Excuse me, excuse me, Judge.' And she was saying—

"The Court: There's no question pending.

"[Defense Counsel]: And you left the courtroom?

"[Appellant]: Yes.

"The Court: You did?

"[Appellant]: Everybody left the room. It was closed.

"The Court: So you just turned around and walked out?

"[Appellant]: Yes.

"The Court: The bailiff didn't escort you?

"[Appellant]: No. The bailiff walked up to tell everybody to leave.

"The Court: Okay. So there wasn't a second bailiff there either.

"[Appellant]: I don't know. I didn't see another man in uniform.

"The Court: All right.

"[Defense Counsel]: So, you left the courtroom and you were not escorted out; correct?

"[Appellant]: No. Everybody—well, actually everybody was escorted out. They told everybody that they were ready to lock the courtroom doors.

"[Defense Counsel]: But were you yourself specifically targeted to be escorted out on your own?

"[Appellant]: No.

"The Court: So then they didn't talk to you out in the hallway after court?

"[Appellant]: Yes.

"The Court: They did?

"[Appellant]: Yes, because I was just there.

"The Court: So, you were the only one they talked to?

"[Appellant]: Yes.

"The Court: But you weren't the only one there; correct.

"[Appellant]: Yes. I was the only one there right then, yes.

"The Court: There was a lady behind you; right?

"[Appellant]: They had left. They walked and got on the elevator. And actually, I think I rode down the elevator with the prosecutor there.

"The Court: All right. But the police officer didn't talk to you for 15 or 20 minutes after court?

"[Appellant]: No.

"The Court: So you think they just remembered you[.] Why?

"[Appellant]: (No response.)

"The Court: Do you know why they remember you out of all those people that appeared in court?

"[Appellant]: Because I had talked to him so much. And I was talking to him, and he said something about the restraining order, I—actually, I'll tell you exactly what happened. The—I asked him when could I actually talk to them about the restraining order—to the judge about the restraining order. And he said obviously the judge isn't going to talk to you about the restraining order, you have to come back.

"The Court: Well, but that's what the court does, isn't it?

"[Appellant]: Yes.

"The Court: Just restraining orders?

"[Appellant]: (No response.)

"The Court: So I would think—

"[Appellant]: I guess I'm not sure that is the only thing they were doing that day.

"The Court: Do you think there was anything unusual about your appearance there that made them remember you over anybody else?

"[Appellant]: Probably because they had so much contact with me."

Appellant contends the foregoing exchange between himself and the trial court exemplified the undermining of appellant's credibility and defense by the trial court. He also contends this exchange was an attempt by the court to vouch for Alvarado's testimony thereby undermining appellant's credibility in the eyes of the jury. Specifically, he argues the "questions like 'Why would the bailiff remember you over anybody else,' were not only argumentative, but called for speculation. It wasn't until the court got appellant to state that he was remembered because 'they had so much contact with me,' thereby inferring appellant might possibly have disturbed the court proceedings, did the trial court desist with this type of improper questioning."

We agree that the trial judge's interference was opprobrious and oppugned appellant's integrity. Moreover, the taint of such prejudicial examination was not dispelled by any admonition or instruction.

The third instance of misconduct took place during the trial judge's focused examination of appellant regarding the fact he showed up at the place where he and Madiha both worked.

After appellant testified that on August 23, 1999, he went to work and left around 10:30 a.m., the following colloquy ensued:

"The Court:   Well, did [Madiha] work that day?

"[Appellant]:   No.

"The Court:   But did you know that when you went to work?

"[Appellant]:   No.

"The Court:   So you weren't concerned about the restraining—you had already gotten the restraining order, hadn't you?

"[Appellant]:   Yes.

"The Court:   So you weren't concerned about the restraining order when you went to work, were you?

"[Appellant]:   Yes, I was. That is why—

"The Court:   But you went anyway?

"[Appellant]:   Yes, because she didn't come the day before, and—

"The Court:   But you didn't know whether she was going to be there or not, did you?

"[Appellant]:   No. And if she was, I would have left. But I left work early to go take care of that restraining order. That's why I left at 10:30.

"The Court:   I understand. But that's not what my question was. Go ahead."

Appellant contends the above questioning by the court was "designed to infer that he not only violated a restraining order, *an offense with which he was charged*, but did so knowingly and willfully with no regard for the seriousness of a court order." He further contends such "interruption and questioning of appellant was argumentative and improper."

We again agree that the trial judge was intemperate and stepped outside the boundaries of what could be characterized as proper examination of witnesses. A plain reading of the colloquy between the judge and appellant clearly reflects that the judge's intent was to elicit from appellant his admission that he knowingly and willfully violated a court's restraining order, and as such, impress on the jury a judicial imprimatur of the People's position. (See *People v. Brock* (1967) 66 Cal.2d 645, 649, 654-655 [58

Cal.Rptr. 321, 426 P.2d 889]; *People v. Flores, supra,* 17 Cal.App.3d at p. 587 ["When the trial judge's remarks transgress the bounds of critical comment and assume the complexion of partisan advocacy and conclude with an expression of a defendant's guilt such comment is prejudicial as a matter of law"].) Such misconduct also was not dispersed by any admonition or instruction.

The fourth and most inflammatory instance of misconduct transpired during the trial judge's spontaneous examination of appellant regarding what he did after leaving the Pasadena courtroom where he claimed he was at the time of fire.

On direct examination, appellant testified that on August 20, 1999, a Friday, after leaving the Pasadena courtroom he drove over to see Lisa, the mother of his daughter, and then stayed with her the rest of that day and Saturday.

During cross-examination, the court questioned him about where Lisa lived and why appellant did not drive by his own house to check whether Madiha was there. Appellant responded that he did not drive by, because of the restraining order. The court reminded him that "it didn't bother [him] earlier in the day." Appellant added that it would have been going out of his way, because he would not go that way to reach Lisa's house, which was six blocks away. In response to the court's further inquiry, appellant admitted that if he had driven by, he would have seen that his house had burned down. He explained that he did not drive by, however, because he was just concerned about picking up Lisa. The court then asked twice whether he had expected to see Madiha when he went to work that Monday. Appellant's first response was yes but it was a big place, and thus, it was possible to stay away from her. His second response was he did not think too much about it, because he was trying to hang on to his job, which he had obtained only a few months prior.

Appellant contends the above questioning by the court was "not only argumentative and in part cumulative, but again, the trial court undertook to develop evidence favorable to the prosecution: the inference being raised that since Lisa's [*sic*] lived only about six blocks from the [house], appellant was lying when he said he picked up Lisa but didn't go by the house because of the TRO, [and] therefore was unaware that the house had burned until the following Monday when he was arrested." He contends the court "persisted in negating appellant's testimony and his credibility" by subsequently "high-light[ing] the inference that appellant knew he would violate the TRO by going to work, and that appellant was not being forthright when he testified

he went to the social security office because it would have been easier for him to go after as opposed to during work."

We conclude that the above examination was a particularly egregious example of bias against appellant and partiality towards the People. The reason why appellant did not drive over to check if Madiha was home was totally extraneous to any issues in this case. The judge's follow-up questions reveal his intent to enable the jury to draw the adverse inference that appellant did not have to drive by, because, having set the fire himself, he already knew the house had burned down. Also, the judge once more improperly sought to elicit from appellant his admission to have violated the restraining order by showing up at the bank when he knew Madiha worked. These instances of misconduct also were not cured by any admonition or instruction.

### 2. Remaining Issues Moot

Inasmuch as the above discussed material instances of prejudicial judicial misconduct warrant reversal of the judgment and remand for a new trial, we deem appellant's remaining assignments of error to be moot.

### DISPOSITION

The judgment is reversed, and the matter is remanded for a new trial.

Vogel (C. S.), P. J., and Hastings, J., concurred.